No. 103,242

STATE OF KANSAS, *Appellee*, v. JOHN PRINE, *Appellant*.

(303 P.3d 662)

Opinion filed May 31, 2013.

*Matthew J. Edge*, of Kansas Appellate Defender Office, argued the cause and was on the brief for appellant.

*Keith E. Schroeder*, district attorney, argued the cause, and *Derek Schmidt*, attorney general, was with him on the briefs for appellee.

The opinion of the court was delivered by

BEIER, J.: This appeal returns to this court after retrial.

In 2009, we reversed defendant John Prine's 2004 convictions for rape, aggravated criminal sodomy, and aggravated indecent liberties because the district judge had erred by admitting evidence of Prine's sexual abuse of two victims other than the one making the allegations underlying this case. *State v. Prine*, 287 Kan. 713, 200 P.3d 1 (2009) (*"Prine I"*). The legislature responded to our decision by amending K.S.A. 60-455, see L. 2009, ch. 103, sec. 12. The district judge ostensibly applied the amended statute to admit the same evidence at Prine's retrial. Prine now challenges his new convictions and his sentence of 387 months' imprisonment. His primary argument is the same that entitled him to reversal in 2009; it does not carry the day this time around.

## FACTUAL AND PROCEDURAL BACKGROUND

### *Crimes and Investigation*

J.C's babysitter fell through. J.C's then-fiancé (now husband), Anthony, had a best friend: defendant John Prine. J.C. contacted Prine, who agreed to act as a backup babysitter. She left Prine with her two babies and her 6-year-old stepdaughter, A.M.C. Anthony, A.M.C.'s father, picked her up after lunch and took her to kindergarten. J.C's mother, A.M.C.'s future grandmother, picked A.M.C. up from school to take her back home, where Prine was still babysitting. On the way home, A.M.C. told her grandmother that she did not want to go home because Prine had touched her. The grandmother relayed this information to J.C., who immediately came home. J.C. told Prine he was free to go, which he did after taking a shower. Then J.C. and Anthony took A.M.C. to the doctor for a medical examination. The examination revealed no injury, but J.C. and Anthony filed a police report, as the doctor suggested.

Detective John Taylor interviewed A.M.C. at the police station. The interview was videotaped. They talked about truth and lies, and about good and bad touching. A.M.C. told Taylor that "John" had given her "bad touches." She told Taylor that Prine had touched her on her "front"—which she identified with "where she went pee from"—with his fingers, his tongue, and his tummy. She demonstrated how he licked his two fingers and touched her front, and she described how he "would pull my front open and lick inside."

Taylor also interviewed Prine, who denied ever inappropriately touching A.M.C. Prine became annoyed and left the police station, but he returned later to make a report concerning illegal activity at a grocery warehouse where Anthony worked. Specifically, he reported that Anthony was stealing from the warehouse.

Several weeks later, Taylor interviewed Prine again. At this time, Prine offered information about unintentional conduct that might have formed the basis for A.M.C.'s allegations. One time, he said, A.M.C. had a swimsuit on and slid down his arm and the side of her swimsuit moved, exposing her vagina; on other occasions, Prine had roughhoused with A.M.C. and his hand might have slipped; and one time A.M.C. got peanut butter on her face, and Prine had licked his thumb and wiped it off. Prine also suggested that A.M.C.'s father might have been the one who molested her.

Between the time that A.M.C. made her initial allegations about Prine and the time that she was interviewed, J.C. called T.M. and informed her about A.M.C.'s accusations. T.M. was Prine's ex-wife and had two children with him. She and defendant had been involved in a bitter custody dispute. T.M.'s daughter, S.M., had previously made allegations that Prine molested her. Taylor interviewed S.M. The interview was recorded. At the time of her interview, S.M. was 9 years old. She stated that defendant—her father—had sex with her when she was little. When she was 4 or 5 years old, he would place her on top of his bare body and she would be naked from the waist down and she could feel his penis on her vagina.

Taylor also interviewed Prine's younger sister, J.S., who had previously reported being molested by defendant. At the time of her

interview, J.S. was 27 years old. She indicated that, from the time she was about 4 years old until she was 10 or 11, defendant sexually abused her. He would lick two fingers and touch her vagina; touch his penis to her vagina; put his mouth and lips on her vagina; and/or wipe saliva on her vagina. She also described him forcing her to have oral sex with him by placing his penis in her mouth. She stated that two of her brothers had, at least on one occasion, witnessed this abuse. When J.S. was 15 years old, she filed a police report in her hometown in Montana, detailing Prine's sexual abuse of her.

*First Trial and Appeal*

After Prine was tried and convicted by a jury on the evidence described above, including the video of Taylor's interview of A.M.C., he appealed. He argued, among other things, that the district judge erred in admitting evidence of his prior sexual abuse of S.M. and J.S. A divided Court of Appeals panel affirmed the admission and his convictions. See *State v. Prine*, No. 93,345, 2006 WL 3479017 (Kan. App. 2006) (unpublished opinion).

On the K.S.A. 60-455 evidence, the majority stated that, despite a general rule that evidence of prior crimes is inadmissible to show intent when it is obvious from the mere doing of the charged act, such evidence should be admissible when a defendant has created "an inference of innocent motive." 2006 WL 3479017, at *4. The majority also relied on its view that, "[d]espite some difference . . . the defendant's conduct [with A.M.C.] was sufficiently similar [to evidence of sexual activity with S.M. and J.S.] to demonstrate a plan or common approach." 2006 WL 3479017, at *5. It also held that, even though the probative value of Prine's intent was slight because of his general denial of the charged crimes, "the combined value of the prior bad acts evidence to prove intent, an absence of mistake or accident, and plan outweighed the potential prejudice to the defendant." 2006 WL 3479017, at *5.

Judge Richard D. Greene dissented on the issue. He would have held that the K.S.A. 60-455 evidence was not admissible to prove intent, absence of mistake or accident, or plan, and that the erroneous admission of the evidence to show propensity denied Prine a fair trial. Specifically, Judge Greene wrote that "there was no

room for any inference of innocent conduct." 2006 WL 3479017, at *6 (Greene, J., dissenting). In his view, intent and absence of mistake or accident were not in issue, as Prine had not offered an innocent explanation for the charged conduct. Judge Greene also wrote that the allegations made by S.M. and J.S. were not sufficiently similar to those made by A.M.C. for the uncharged crimes to prove plan or modus operandi. 2006 WL 3479017, at *6.

On Prine's petition for review, this court reversed the convictions and remanded the case for retrial. In our opinion, we discussed the history of K.S.A. 60-455's inconsistent application to child sexual abuse cases. We concluded that, here, although potentially probative, the evidence of prior sexual abuse of S.M. and J.S. was not material because intent was not in issue; the acts alleged were obviously criminal and not innocent. We also concluded that the evidence was not relevant to prove absence of mistake or accident; defendant's pretrial interview hypotheses for how the allegations arose did not create a basis for the admission of the evidence because the theory of his trial defense was categorical denial. Furthermore, after reviewing the inconsistent application of a similarity standard for admission of other crimes and civil wrongs evidence to prove "plan," we held that such evidence must be "so 'strikingly similar' in pattern or so distinct in method of operation as to be a 'signature.' " *Prine I*, 287 Kan. at 735 (quoting *State v. Jones*, 277 Kan. 413, 423, 85 P.3d 1226 [2004]). Here, although S.M. and J.S. were the same gender as A.M.C. and were abused at approximately the same age, and although some of the activities defendant engaged in with each victim bore some likeness, the behaviors were not so unusual or identical as to constitute a signature. Having held that none of the bases for admission under K.S.A. 60-455 were sound, we addressed harmlessness of the error. Ultimately, we concluded that, because the State's entire case hinged on A.M.C.'s credibility, the error required reversal of Prine's convictions. *Prine I*, 287 Kan. at 739-40.

In *Prine I*, we also noted that "evidence of prior sexual abuse of children is peculiarly susceptible to characterization as propensity evidence forbidden under K.S.A. 60-455 and, thus, convictions of such crimes are especially vulnerable to successful attack on ap-

peal." However, the "modern psychology of pedophilia" suggests that propensity evidence may possess probative value for juries, because "sexual attraction to children and a propensity to act upon it are defining symptoms of this recognized mental illness." We suggested that the legislature could "examine the advisability of amend[ing] K.S.A. 60-455." *Prine I*, 287 Kan. at 737.

## *K.S.A. 60-455 Amendment*

Amend the legislature did, just 3 months after our decision was issued. K.S.A. 2009 Supp. 60-455 became effective April 30, 2009. L. 2009, ch. 103, sec. 12. The amended statute's subsection (a) contains the original prohibition on admission of other crimes or wrongs evidence. Its subsection (b) contains the earlier version's non-exhaustive list of material facts that other crimes and civil wrongs evidence is admissible to prove. The new subsection (c) states that, in any criminal action other than certain listed sexual-offense prosecutions, such evidence is admissible "to show the modus operandi or general method used by a defendant to perpetrate similar but totally unrelated crimes when the method of committing the prior acts is so similar to that utilized in the current case before the court that it is reasonable to conclude the same individual committed both acts." K.S.A. 2009 Supp. 60-455(c). K.S.A. 2009 Supp. 60-455(d) reads in pertinent part:

"(d) Except as provided in K.S.A. 60-445, and amendments thereto, in a criminal action in which the defendant is accused of a sex offense under articles 34, 35 or 36 of chapter 21 of the Kansas Statutes Annotated and amendments thereto, evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative."

The statute requires the State to disclose such evidence and its intent to introduce it at least 10 days before trial, K.S.A. 2009 Supp. 60-455(e), and instructs that the statute "shall not be construed to limit the admission . . . of evidence under any other rule or to limit the admissibility" of other crimes or civil wrongs evidence in actions other than sexual offense criminal actions. K.S.A. 2009 Supp. 60-455(f). Subsection (g) lists the included acts or offense(s) of sexual misconduct referenced in subsection (d). Finally, the

amended statute contains a severability provision. K.S.A. 2009 Supp. 60-455(h).

*Retrial*

At Prine's August 2009 retrial, A.M.C. again testified. She told the jury that Prine touched her "private," on the inside and the outside, and with his fingers, his tongue, and his stomach. She also said that he would lick his two fingers and touch her private parts.

Steve Edwards, a clinical social worker who had performed a sexual abuse evaluation on A.M.C., testified that he interviewed her about good touching and bad touching, and about body parts. She told Edwards that "John," her dad's friend, was "doing it to her," and that it happened more than one or two times and in "lots of places" in her house. A.M.C. told Edwards that Prine had touched her front part with his fingers, his tongue, and his tummy.

In addition, on retrial, on the State's motion and over defendant's continuing objection, the district judge allowed S.M. and J.S. to testify about Prine's uncharged abuse of them. The judge apparently relied upon the freshly amended K.S.A. 60-455, but the record before us contains neither a written ruling on the State's motion nor a transcript of a proceeding in which the motion was heard and granted. The State's motion to admit the evidence had argued it was admissible under the newly amended statute because subsection (d) required it to be only "relevant and probative," not "strikingly similar"; and the evidence was relevant and probative to prove intent, lack of mistake or accident, and/or plan.

S.M., 14 at the time of retrial, testified that Prine would "tak[e] me into the bedroom and tak[e] his clothes off, tak[e] mine off, and then [sit] me on the bed and then hav[e] sex, basically." Edwards, the social worker, testified that he had counseled S.M. and around February 2003 performed a sexual abuse evaluation on her. S.M. had told him that "John," who was her biological father, would force her to come into a bedroom, would put honey on his private part, and would force her to "get on his private." When S.M. testified during the retrial, she said that she remembered telling Edwards about honey but she did not remember "where it [fit] in."

S.M.'s mother testified about how she learned that S.M. had been molested, and how it was that J.C. eventually contacted her.

J.S. testified that from about the time she was 4 years old until she was about 10, Prine, who was her half-brother, would sexually abuse her. He would force her to perform oral sex on him; he would perform oral sex on her; he would lick his fingers and touch her between the legs; and he would rub his penis between her legs. She testified that later, when she was 15, she made a report about this abuse to the police in Montana where she lived. She testified that two of her brothers had witnessed at least one incident.

J.S.'s half-brother, M.S., testified that in 1983, when he was about 12 years old and J.S. was about 6, he remembered looking through a bedroom door and seeing her performing oral sex on defendant.

N.P., the other brother who had allegedly witnessed the 1983 incident, testified for the defense. He denied witnessing Prine abuse J.S. and said M.S. had told him that no abuse happened.

Prine also testified during his retrial. He described his family relationships and his friendship with Anthony. He testified about his relationship with J.C., and how she began making advances toward him, which he rebuffed. He testified about the events of December 11, 2003, when he babysat J.C.'s and Anthony's children, and he denied licking or inserting his fingers into A.M.C.'s vagina. He testified about having offered possible explanations to the police about "where [such] an idea could end up coming from"; again, a swimsuit malfunction, roughhousing, and a "spit bath." He testified that, after these allegations arose, he reported that Anthony was stealing from the warehouse where he worked, and that he did so because he was angry. He denied suggesting that Anthony had molested A.M.C. He also denied sexually molesting either his daughter, S.M., or his half-sister, J.S.

The jury was instructed that it could consider evidence of uncharged sexual offenses "solely for the purpose of proving John Prine's intent, plan, absence of mistake or accident." Prine did not object to the language of this instruction. Prine was again convicted, and he was sentenced to 387 months' imprisonment.

*Appeal*

This appeal was transferred to this court from our Court of Appeals on our own motion. Prine raises four claims of error. First, Prine argues that the district judge erred in admitting evidence of his prior sexual abuse of J.S. and S.M. Second, he argues that application of the amended version of K.S.A. 60-455 at his retrial violated the federal constitutional prohibition on ex post facto laws. Prine's third and fourth claims challenge his sentence. The arguments on both sentencing challenges have previously been rejected, and we decline to depart here from our precedents. See, *e.g., State v. Johnson,* 286 Kan. 824, 851, 190 P.3d 207 (2008) (imposition of aggravated sentence in grid box without factors proved beyond reasonable doubt to jury not constitutional violation); *State v. Ivory,* 273 Kan. 44, 46, 41 P.3d 781 (2002) (imposition of increased sentence based on criminal history not proved to jury beyond reasonable doubt not constitutional violation).

We will not further discuss Prine's third and fourth claims of error in the remainder of this opinion. We address Prine's first and second claims of error in reverse order for the sake of analytical clarity.

## DISCUSSION

*Ex Post Facto*

Prine acknowledges that this issue was not raised before the district court. Issues not raised below generally are precluded on appeal. See *State v. Warledo,* 286 Kan. 927, 938, 190 P.3d 937 (2008). This rule includes constitutional grounds for reversal. See *State v. Gomez,* 290 Kan. 858, 862, 235 P.3d 1203 (2010).

But this preservation rule is not without exceptions. A constitutional question raised for the first time on appeal may be considered when: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is determinative of the case; (2) consideration of the question is necessary to serve the ends of justice or to prevent the denial of fundamental rights; or (3) the district court is right for the wrong reason. See *State v. Herbel,* 296 Kan. 1101, Syl. ¶ 5, 299 P.3d 292 (2013).

Prine urges us to address his ex post facto claim because the first and second exceptions apply. We agree that this is an appropriate case for invocation of the second exception. In *Prine I*, we concluded that the admission of evidence concerning prior sexual abuse of S.M. and J.S. violated the pre-2009 statute, and the erroneous admission of that evidence was not harmless. If retroactive application of the amended statute violates the Ex Post Facto Clause of the federal Constitution, then Prine insists that his convictions must again be reversed and the case remanded for a third trial because of *Prine I*'s analysis of the old version of K.S.A. 60-455. In short, the contours of our earlier decision set up the possibility that today's ruling on the ex post facto issue claim could lead to a violation of Prine's fundamental right to a fair trial. We therefore choose to address this constitutional question under the second exception to our preservation rule. See *State v. Garcia*, 285 Kan. 1, 10, 169 P.3d 1069 (2007) (argument that application of amended statute of limitations violated ex post facto considered despite failure to raise statute of limitations defense, ex post facto argument in district court).

The United States Supreme Court has set forth four categories of ex post facto violations:

" '1st. Every law that makes an action done before the passing of the law, and which was innocent when done, criminal; and punishes such action. 2d. Every law that aggravates a crime, or makes it greater than it was, when committed. 3d. Every law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed. 4th. Every law that alters the legal rules of evidence, and receives less, or different, testimony, than the law required at the time of the commission of the offence, in order to convict the offender. All these, and similar laws, are manifestly unjust and oppressive.' " *Stogner v. California*, 539 U.S. 607, 612, 123 S. Ct. 2446, 156 L. Ed. 2d 544 (2003) (quoting *Calder v. Bull*, 3 U.S. [3 Dall.] 386, 390-91, 1 L. Ed. 648 [1798]; law enacted after expiration of previously applicable statute of limitations period violated Ex Post Facto Clause when applied to revive a time-barred prosecution).

Kansas decisions have restated the prohibition on ex post facto laws to require two elements to be present: "(1) The law must be retrospective, applying to events occurring before its enactment, and (2) it must alter the definition of criminal conduct or increase the penalty by which a crime is punishable." *Anderson v. Bruce*,

274 Kan. 37, 43, 50 P.3d 1 (2002). In other words, the law must be retrospective and it must disadvantage the offender affected by it. *State v. Chamberlain*, 280 Kan. 241, 247, 120 P.3d 319 (2005) (citing, e.g., *Stansbury v. Hannigan*, 265 Kan. 404, 412, 960 P.2d 227, cert. denied 525 U.S. 1060 [1998]). The critical question in evaluating an ex post facto claim is whether the law changes the legal consequences of acts completed before its effective date. *Weaver v. Graham*, 450 U.S. 24, 31, 101 S. Ct. 960, 67 L. Ed. 2d 17 (1981); *State v. Armbrust*, 274 Kan. 1089, 1093, 59 P.3d 1000 (2002).

Impermissible under the fourth *Stogner* category, implicated here, are laws that reduce the burden of persuasion the prosecution must satisfy to win a conviction. *Carmell v. Texas*, 529 U.S. 513, 530, 120 S. Ct. 1620, 146 L. Ed. 2d 577 (2000) (amendment to Texas statute authorizing conviction of certain sex offenses on victim's testimony alone altered rules of evidence, required less evidence to convict; previous statute required victim's testimony plus corroborating evidence); *Hopt v. Utah*, 110 U.S. 574, 590, 4 S. Ct. 202, 28 L. Ed. 262 (1884) ("Any statutory alteration of the legal rules of evidence which would authorize conviction upon less proof, in amount or degree, than was required when the offence was committed" may run afoul of ex post facto prohibition.).

But ordinary rules of evidence generally do not violate the Clause. *Carmell v. Texas*, 529 U.S. at 533 n.23 ("[S]uch rules, by simply permitting evidence to be admitted at trial, do not at all subvert the presumption of innocence . . . [and] to the extent one may consider changes to such laws as 'unfair' or 'unjust,' they do not implicate the same kind of unfairness implicated by changes in rules setting forth a sufficiency of the evidence standard.").

The United States Supreme Court has consistently held that

" '[s]tatutes which simply enlarge the class of persons who may be competent to testify in criminal cases are not ex post facto in their application to prosecutions for crimes committed prior to their passage; for they do not attach criminality to any act previously done, and which was innocent when done; nor aggravate any crime theretofore committed; nor provide a greater punishment therefor than was prescribed at the time of its commission; nor do they alter the degree, or lessen the amount or measure, of the proof which was made necessary to conviction

when the crime was committed.' " *Carmell*, 529 U.S. at 543 (quoting *Hopt*, 110 U.S. at 589).

Such a change does not qualify as ex post facto, "[e]ven though it may work to the disadvantage of a defendant." *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S. Ct. 2290, 53 L. Ed. 2d 344 (1977).

We find the case of *Thompson v. Missouri*, 171 U.S. 380, 18 S. Ct. 922, 43 L. Ed. 204 (1898), to be virtually indistinguishable from the one before us today. In that case, George Thompson was tried and convicted for poisoning the sexton of a St. Louis church. The evidence was entirely circumstantial. Key questions of fact included the authorship of a prescription for strychnine and a certain letter addressed to the church organist that contained threatening language about the sexton. Thompson denied writing either the prescription or the letter. At trial, several personal letters written by Thompson to his wife were admitted for purposes of handwriting comparison. The Supreme Court of Missouri held this was error and reversed and ordered a new trial. Before the new trial was held, the Missouri Legislature enacted a statute providing that " 'comparison of a disputed writing with any writing proved to the satisfaction of the judge to be genuine shall be permitted to be made by witnesses, and such writings and . . . evidence . . . may be submitted to the court and jury as evidence of the genuineness or otherwise of the writing in dispute.' " 171 U.S. at 381 (quoting Laws Mo. 1895 p. 284). At Thompson's retrial, the letters were again admitted—this time pursuant to the new statute—for purposes of comparing them with the strychnine prescription and letter to the organist. On appeal, the Missouri Supreme Court rejected Thompson's ex post facto argument and affirmed his conviction. The United States Supreme Court affirmed.

The Court's holding in that case is applicable here:

"[T]he statute of Missouri relating to the comparison of writings is not ex post facto when applied to prosecutions for crimes committed prior to its passage. If persons excluded upon grounds of public policy at the time of the commission of an offense, from testifying as witnesses for or against the accused, may, in virtue of a statute, become competent to testify, we cannot perceive any ground upon which to hold a statute to be ex post facto which does nothing more than admit evidence of a particular kind in a criminal case upon an issue of fact which was

not admissible under the rules of evidence as enforced by judicial decisions at the time the offense was committed. The Missouri statute, when applied to this case, did not enlarge the punishment to which the accused was liable when his crime was committed, nor make any act involved in his offense criminal that was not criminal at the time he committed the murder of which he was found guilty. It did not change the quality or degree of his offense. Nor can the new rule introduced by it[] be characterized as unreasonable [so as to affect the accused's] substantial rights . . . . The statute did not require 'less proof, in amount or degree,' than was required at the time of the commission of the crime charged upon him." *Thompson*, 171 U.S. at 386-87.

Following the lead of *Thompson*, we hold that application of the amended version of K.S.A. 60-455 at Prine's retrial did not violate the Ex Post Facto Clause.

### *Admission of Evidence*

Before April 30, 2009, K.S.A. 60-455 provided:

"Subject to K.S.A. 60-447, evidence that a person committed a crime or civil wrong on a specified occasion, is inadmissible to prove his or her disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but, subject to K.S.A. 60-445 and 60-448 such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident."

### The amended version of K.S.A. 2009 Supp. 60-455 states:

"(a) Subject to K.S.A. 60-447, and amendments thereto, evidence that a person committed a crime or civil wrong on a specified occasion, is in-admissible to prove his or her such person's disposition to commit crime or civil wrong as the basis for an inference that the person committed another crime or civil wrong on another specified occasion but,

"(b) Subject to K.S.A. 60-445 and 60-448, and amendments thereto, such evidence is admissible when relevant to prove some other material fact including motive, opportunity, intent, preparation, plan, knowledge, identity or absence of mistake or accident.

"(c) Subject to K.S.A. 60-445 and 60-448, and amendments thereto, in any criminal action other than a criminal action in which the defendant is accused of a sex offense under articles 34, 35 or 36 of chapter 21 of the Kansas Statutes Annotated, and amendments thereto, such evidence is admissible to show the modus operandi or general method used by a defendant to perpetrate similar but totally unrelated crimes when the method of committing the prior acts is so similar to that utilized in the current case before the court that it is reasonable to conclude the same individual committed both acts.

"(d) Except as provided in K.S.A. 60-445, and amendments thereto, in a criminal action in which the defendant is accused of a sex offense under articles 34, 35 or 36 of chapter 21 of the Kansas Statutes Annotated, and amendments thereto, evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative.

"(e) In a criminal action in which the prosecution intends to offer evidence under this rule, the prosecuting attorney shall disclose the evidence to the defendant, including statements of witnesses, at least 10 days before the scheduled date of trial or at such later time as the court may allow for good cause.

"(f) This rule shall not be construed to limit the admission or consideration of evidence under any other rule or to limit the admissibility of the evidence of other crimes or civil wrongs in a criminal action under a criminal statute other than in articles 34, 35 or 36 of chapter 21 of the Kansas Statutes Annotated, and amendments thereto.

"(g) As used in this section, an "act or offense of sexual misconduct" includes:

(1) Any conduct proscribed by article 35 of chapter 21 of the Kansas Statutes Annotated, and amendments thereto;

(2) the sexual gratification component of aggravated trafficking, as described in subsection (a)(1)(B) and (a)(2) of K.S.A. 21-3447, and amendments thereto;

(3) exposing another to a life threatening communicable disease, as described in subsection (a)(1) of K.S.A. 21-3435, and amendments thereto;

(4) incest, as described in K.S.A. 21-3602, and amendments thereto;

(5) aggravated incest, as described in K.S.A. 21-3603, and amendments thereto;

(6) contact, without consent, between any part of the defendant's body or an object and the genitals, mouth or anus of the victim;

(7) contact, without consent, between the genitals, mouth or anus of the defendant and any part of the victim's body;

(8) deriving sexual pleasure or gratification from the infliction of death, bodily injury or physical pain to the victim;

(9) an attempt, solicitation or conspiracy to engage in conduct described in paragraphs (1) through (8); or

(10) any federal or other state conviction of an offense, or any violation of a city ordinance or county resolution, that would constitute an offense under article 35 of chapter 21 of the Kansas Statutes Annotated, and amendments thereto, the sexual gratification component of aggravated trafficking, as described in subsection (a)(1)(B) and (a)(2) of K.S.A. 21-3447, and amendments thereto; incest, as described in K.S.A. 21-3602, and amendments thereto; or aggravated incest, as described in K.S.A. 21-3603, and amendments thereto, or involved conduct described in paragraphs (6) through (9).

"(h) If any provisions of this section or the application thereof to any person or circumstances is held invalid, the invalidity does not affect other provisions or applications of this section which can be given effect without the invalid provisions or application. To this end the provisions of this section are severable."

Even though both sides seem to agree that the district judge applied the amended statute to admit the evidence about Prine's abuse of S.M. and J.S. on retrial, the parties' merits arguments on the propriety of that admission—and, to the extent we can tell from the incomplete record, the district judge's ruling—seem to have focused nearly exclusively on language carried from the old version into subsections (a) and (b) of the amended statute. In other words, this case continued to concentrate on whether the evidence was admissible to prove intent, absence of mistake or accident, and plan. The defense now argues that the district judge's ruling was just as erroneous at retrial as it was at Prine's first trial. For its part, the State vociferously denounces *Prine I*'s decision that intent was not in issue and its requirement that 60-455 plan evidence requires a similarity amounting to a "signature." The State also repeats its argument that Prine advanced innocent explanations during the investigation of A.M.C.'s allegations, making absence of mistake or accident relevant at trial. The State's only express reliance on subsection (d) of the new statute comes in its brief's conclusory statement that the disputed evidence meets the subsection's requirement that it be relevant and probative.

These circumstances demand that we examine both what could and should have occurred under the amended statute compared to what did occur, and that we then determine whether any variation from the new normal had a negative impact on Prine's substantial rights or the reliability of his convictions.

The interpretation and, if necessary, construction of statutes raise questions of law reviewable de novo on appeal. See *State v. Arnett*, 290 Kan. 41, 47, 223 P.3d 780 (2010). A logically necessary corollary of this rule is that this court is in as good a position as the district judge to analyze the meaning and applicability of the language added to K.S.A. 60-455 in 2009.

The most fundamental rule of statutory interpretation and construction is that the intent of the legislature governs if that intent can be ascertained. *Arnett*, 290 Kan. at 47. We first attempt to ascertain legislative intent through the statutory language enacted, giving common words their ordinary meanings. *State v. Raschke*, 289 Kan. 911, 914, 219 P.3d 481 (2009). When a statute is plain

and unambiguous, we do not speculate as to the legislative intent behind it and will not read into the statute something not readily found in it. Where there is no ambiguity, we need not resort to statutory construction. Only if the statute's language or text is unclear or ambiguous do we use canons of construction or legislative history or other background considerations to construe the legislature's intent. *State v. Trautloff*, 289 Kan. 793, 796, 217 P.3d 15 (2009). In doing so, we may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested. See *In re Tax Exemption Application of Lietz Constr. Co.*, 273 Kan. 890, 898, 47 P.3d 1275 (2002). We cannot delete provisions or supply omissions in a statute. No matter what the legislature may have really intended to do, if it did not in fact do it, under any reasonable interpretation of the language used, the defect is one that the legislature alone can correct. See *State v. Johnson*, 289 Kan. 870, 879, 218 P.3d 46 (2009).

The plain language of the amended statute retains the old version's general prohibition on the use of propensity evidence in subsection (a). Subsection (b) contains the old version's nonexclusive list of material facts other than propensity that may be proved by other crimes and civil wrongs evidence. Meanwhile, the amended statute's new language in subsection (c) responds to our *Prine I* ruling that other crimes or civil wrongs admitted to show a non-preparation type of plan must be so "strikingly similar" or so similar as to constitute a "signature" when compared with the charged crime. This subsection explicitly does not apply to the sex offense prosecutions such as this. New subsection (d) does cover sex crime prosecutions; it permits evidence of other acts or offenses of sexual misconduct to be admitted in such a prosecution "for its bearing on any matter to which it is relevant and probative."

The basic prohibition contained in the original statute, now subsection (a), is straightforward: Evidence that a defendant committed a crime or civil wrong on a specified occasion is generally inadmissible to prove that person's disposition or propensity to commit the charged crime. As a rule of exclusion, the prohibition on propensity evidence is based on the principle that such evidence

is irrelevant and unduly prejudicial; and, historically, the rule has been strictly enforced. See *State v. Gunby*, 282 Kan. 39, 50, 144 P.3d 647 (2006) (citing cases).

But the legislature's intention to relax the prohibition on evidence of other acts or offenses of sexual misconduct to show propensity, indeed, and "any matter to which it is relevant and probative" in sex crime cases is explicit in the statute's new subsection (d). This plain language could and should have governed the K.S.A. 60-455 issue on retrial of this case.

We note that our interpretation of the plain language of subsection (d) is reinforced by contemporaneous legislative committee minutes and testimony showing that the proposed amendment was patterned after Federal Rules of Evidence 413 and 414. See H.B. 2250; S.B. 44; Minutes from the House Judiciary Committee, February 9, 2009; Minutes from the Senate Judiciary Committee, March 9, 2009, March 10, 2009; see also Comment, *How Similar is Similar? Confusing the Similarity Standard for the Admission of Prior Crimes Evidence under the Plan Exception in Child Molestation Cases*, 44 Washburn L.J. 157, 159-60 (2004) (urging legislature to "adopt a statute that codifies the Federal Rules of Evidence 413 to 415, along with Kansas' common law practice of liberally admitting prior crimes evidence in sex abuse cases . . . [to] permit the inference that the defendant has a propensity to molest children, and thus is more likely to have committed the charged crime in accord with this character trait").

Rule 413 states that, "[i]n a criminal case in which a defendant is accused of a sexual assault, the court may admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 413(a). Rule 414 permits the same use for similar prior crimes evidence in child molestation cases, stating "[i]n a criminal case in which a defendant is accused of child molestation, the court may admit evidence that the defendant committed any other child molestation. The evidence may be considered on any matter to which it is relevant." Fed. R. Evid. 414(a). These federal rules have been interpreted to allow propensity evidence in sexual assault and child molestation cases. See, *e.g.*, *Seeley v. Chase*, 443 F.3d 1290,

1294 (10th Cir. 2006); *United States v. McHorse*, 179 F.3d 889, 903 (10th Cir. 1999); *United States v. Guardia*, 135 F.3d 1326, 1332 (10th Cir. 1998); *United States v. Enjady*, 134 F.3d 1427, 1431 (10th Cir. 1998); see also *United States v. Dillon*, 532 F.3d 379, 387 (5th Cir. 2008); *United States v. Julian*, 427 F.3d 471, 486 (7th Cir. 2005); *United States v. Sioux*, 362 F.3d 1241, 1244 (9th Cir. 2004); *Johnson*, 283 F.3d at 151; *United States v. LeMay*, 260 F.3d 1018, 1026 (9th Cir. 2001), *cert. denied* 534 U.S. 1166 (2002); *United States v. Mound*, 149 F.3d 799, 800-01 (8th Cir. 1998). Subsequent subsections in both Rule 413 and 414 set out pretrial disclosure requirements, as well as pertinent directives and definitions similar to those contained in the amended K.S.A. 60-455(e), (f), and (g). Federal Rule of Evidence 415 permits the same types of evidence in civil cases involving sexual assault or child molestation. See, *e.g.*, *Johnson v. Elk Lake School Dist.*, 283 F.3d 138, 150-52 (3d Cir. 2002).

Subsection (d) of the amended K.S.A. 60-455 still requires, as the State admits, a district judge to perform a gatekeeping function. Under the language of the amended statute, the evidence of the other act or offense of sexual misconduct the State desires to admit must be "relevant and probative." This court's definition of those two terms makes the "and probative" portion of that phrase redundant; the concept of relevance encompasses both materiality and probative value. See K.S.A. 60-401(b); *Prine I*, 287 Kan. at 725. Materiality requires that whatever fact sought to be proved be in dispute or in issue between the parties to the case. See *Garcia*, 285 Kan. at 14. The requirement of probative value demands that the evidence have a logical tendency to prove the material fact. See, *e.g.*, *State v. Reid*, 286 Kan. 494, 505, 186 P.3d 713 (2008).

Under our cases construing and applying K.S.A. 60-455 as it existed before the 2009 amendment, district judges were required to evaluate these concepts. See *Prine I*, 287 Kan. at 724-25 (under traditional rubric, admissibility of K.S.A. 60-455 evidence depends on three factors: [1] evidence must be relevant to prove material fact; [2] material fact must be disputed; [3] probative value of evidence must not be substantially outweighed by risk of unfair prej-

udice); see also K.S.A. 60-403 (exclusionary rules inapplicable to undisputed material facts, except district court may weigh probative value, elect to exclude); *State v. Leitner*, 272 Kan. 398, 415, 34 P.3d 42 (2001) (although K.S.A. 60-445 requires district judge to balance probative value, prejudice only when opposing party claims surprise, balance may require exclusion "as a rule of necessity" when probative value substantially outweighed by the risk of unfair prejudice, regardless of existence of surprise). Thus these concepts will be familiar as district judges apply the amended statute.

Under the prior version of K.S.A. 60-455, we also required district judges to balance the probative value of other crimes or civil wrongs evidence against the threat of undue prejudice. See, *e.g.*, *State v. Vasquez*, 287 Kan. 40, 49, 194 P.3d 563 (2008). Neither side in this appeal has suggested that we abandon this judicially created safeguard. We thus leave the question of whether the necessity of this weighing persists under new subsection (d) to another day. Assuming that it does persist, federal cases interpreting Rules 413, 414, and 415 on which subsection (d) was modeled provide helpful guidance on how the weighing is to be conducted. See *United States v. Meacham*, 115 F.3d 1488, 1492 (10th Cir.1997) (Rule 403 applies to Rule 414 evidence); see also *United States v. Sturm*, 673 F.3d 1274, 1284-85 (10th Cir. 2012) (four-factor analysis under Rule 403 applies to prior crimes evidence: [1] how clearly prior act has been proved; [2] how probative evidence is of material fact it is admitted to prove; [3] how seriously disputed material fact is; and [4] whether government can avail itself of any less prejudicial evidence); *Enjady*, 134 F.3d at 1433 (setting forth Rule 403 test for Rule 413 evidence; noting exclusion of relevant evidence under test should be infrequent, reflecting Congress' legislative judgment that evidence of similar crimes should "normally" be admitted in child molestation cases); *Benally*, 500 F.3d at 1090-91 (extending *Enjady* to Rule 414 evidence).

In addition, when evidence was admitted under the unamended statute, in order to avoid the jury's consideration of the evidence for prohibited propensity, we required a limiting instruction listing the material facts in issue for which the evidence could be consid-

ered. See *Prine I*, 287 Kan. at 724-25. Although neither party challenges the continuation of this judicially created safeguard, its obsolescence under the amended statute is clear. In a sex crime prosecution governed by new subsection (d), there remains no reason to tell jurors to ignore the bearing prior sexual misconduct may have on the defendant's propensity to commit the charged crime or crimes. If other sex crimes or civil wrongs are relevant, *i.e.*, material and probative of propensity, the jury may consider them for that. We no longer need the workaround the limiting instruction hoped to ensure.

In this case then, on retrial, the State could and should have sought to admit the evidence of Prine's abuse of S.M. and J.S. under new subsection (d) of K.S.A. 2009 Supp. 60-455. It could have avoided analysis of intent, absence of mistake or accident, and plan completely, focusing only on whether Prine's other sexual misconduct was relevant and probative of his propensity to abuse A.M.C. Had the State done so, the district judge would still have been called upon to determine relevance, *i.e.*, materiality and probative value for propensity; and, as of today at least, he would still have needed to conduct a weighing of probative value and undue prejudice. If the judge then ruled admission was proper, he would not have needed to give a K.S.A. 2009 Supp. 60-455 limiting instruction.

Having set out what could and should have been, we turn to what actually was.

As in the first trial, the State sought on retrial to admit evidence of Prine's abuse of S.M. and J.S. to show intent, absence of mistake or accident, and plan. Prine is correct that the evidence was no more relevant to intent or to absence of mistake or accident the second time around than it was on the first. The State points us to no improvement or other alteration in its case that would change our analysis of these two bases for admission, and we will not repeat what we said in *Prine I*.

Admission for plan, however, merits a slightly more extended evaluation.

The State would like us to rule that subsection (c) of the amended K.S.A. 60-455 should have been applied to permit ad-

mission of the evidence to prove nonpreparation plan. But this is contrary to the plain language of the subsection, which expressly excludes its application in a sex crime prosecution such as this. See K.S.A. 2009 Supp. 60-455(c). The meaning and efficacy of the legislature's apparent effort to modify the "strikingly similar" or "signature" standard enunciated in *Prine I* is simply not at issue here. See K.S.A. 2009 Supp. 60-445(c).

The defense, recognizing subsection (c)'s inapplicability in this sex crime prosecution, urges us to hold that *Prine I* sets the default similarity requirement for subsection (d) relevance of this type of plan evidence. We agree. Subsection (d) did nothing to change the "strikingly similar" or "signature" ruling of *Prine I*. The fact of Prine's plan, or, really, his identity as A.M.C.'s abuser, was put in issue by Prine's general denial. It thus was material, a quality whose existence we review de novo. See *Vasquez*, 287 Kan. at 50. Without a "strikingly similar" pattern or "signature" between that abuse and the abuse of S.M. and J.S., however, the evidence of the other crimes was not probative of the material fact; and we repeat our holding of *Prine I* that the district judge's contrary ruling was an abuse of discretion. See *Prine I*, 287 Kan. at 725-28; see also Vasquez, 287 Kan. at 50 (existence of probative value reviewed under abuse of discretion standard). Admission of the evidence to prove plan was still error on retrial under the amended version of K.S.A. 60-455.

The last question we must answer is: Did this error make any difference? We ruled that it did in Prine's first trial and reversed. We make the opposite ruling now.

The problem for the defense is that subsection (d) necessarily changed our calculus on reversibility of this error. As we have already observed, K.S.A. 60-455 evidence relevant to propensity— leaving aside any constitutionality question not argued in this case—is admissible under new subsection (d). Because we have no doubt that, on any third trial of Prine, the evidence of his abuse of S.M. and J.S. would again come before the jury as propensity evidence, see *Prine I*, 287 Kan. at 737, and that its probative value would be deemed more weighty than its threat of undue prejudice, no reversal is required. Although the State's and the district judge's

grasp of the import and workings of the amended statute at retrial was tenuous, their efforts to protect Prine's rights at retrial went beyond anything to which he would be entitled after a second reversal. This means that we see no error that affects Prine's substantial rights under K.S.A. 60-261.

## CONCLUSION

Although the district judge erred at defendant John Prine's retrial by admitting evidence of Prine's uncharged sexual abuse of two victims, the certainty that the evidence would come in as relevant to Prine's propensity to abuse the victim in this case under K.S.A. 2009 Supp. 60-455(d) means reversal is not required. The judgment of the district court is therefore affirmed as right for the wrong reasons.