Johnson, J.,
concurring: The majority appears to have reached the correct result under our current caselaw precedent, and I will concur in that result. But I feel compelled to write separately on two matters. First, I cannot traverse the “route to harmlessness” constructed by the majority from the prior “skip rule,” which it uses as an alternative rationale for not reversing on the district court’s failure to give the lesser included offense instruction on unintentional but recldess second-degree murder. Second, I cannot grasp the logic in declaring that the identity of the person depicted in a posed, predeath photograph is relevant to the identity of a murder victim whose slain body was set afire.
The majority does acknowledge our recent rejection of the “skip rule” as a mechanically applied, bright-line rule. See State v. Plummer, 295 Kan. 156, Syl. ¶ 5, 283 P.3d 202 (2012) (“skip rule should be viewed as simply providing a route to harmlessness”); State v. *537 Simmons, 295 Kan. 171, Syl. ¶ 5, 283 P.3d 212 (2012) (skip rule “not amenable to mechanical application; rather, it should be viewed as simply providing a route to harmlessness”); State v. Hayes, 299 Kan. 861, 866, 327 P.3d 414 (2014) (“We note that the sldp rule is not amenable to mechanical application and that it should be viewed as simply providing a route to finding harmless error in those cases in which the elements of the crime of conviction, as compared to a rejected lesser included offense, necessarily show that tire jury would have rejected or eliminated a still lesser included offense.”).
Likewise, the majority cites to State v. Williams, 295 Kan. 506, Syl. ¶ 5, 286 P.3d 195 (2012), where we set forth the steps to follow in analyzing a failure to instruct issue raised for the first time on appeal. At the last step—reversibility—we burdened the appellant with a clearly erroneous standard requiring the appellant to firmly convince the appellate court that the jury would have reached a different result if the unrequested instruction had been given. In my view, the crime with which the juiy convicted the defendant in relation to the lesser included offenses it rejected to reach that verdict would simply be part of the clearly erroneous reversibility calculus. In other words, if the jury’s rejection of a lesser included offense would logically indicate a rejection of a still lesser included offense, die appellant would be hard-pressed to carry the burden of firmly convincing the appellate court that the jury’s verdict would have been different with the still lesser included offense instruction. I see no reason for a separate “skip rule” harmlessness analysis, and, to avoid any possible confusion among the bench and bar, I would abandon all future mention of that particular term.
Here, simply utilizing the clearly erroneous reversibility standard and reviewing the evidence presented to the jury, I concur in the result because I am not firmly convinced that the jury would have reached a different verdict if it had been given the unintentional but reckless second-degree murder instruction. Nevertheless, in my view, tire jury’s rejection of intentional second-degree murder in favor of the crime of conviction for a version of premeditated first-degree murder has no logical part to play in that reversibility determination. The fact that the jury selected one version of in *538 tentional tolling over another version of intentional tolling does not logically eliminate a recldess version of homicide, i.e., does not provide a route to harmlessness. The majority’s emphasis on the jury’s having found premeditation and intent to toll in the crime of conviction, while rejecting just an intent to toll in the given lesser included offense of second-degree murder, tells us nothing about the jury’s view on recklessness. The principal crime almost always has an element that is missing in a lesser offense, so that tire majority’s rationale would almost always render harmless the failure to instruct on lesser included offenses. To the contrary, the point here should be that the juiy was not given an opportunity to choose a recldess killing over an intentional one so that there would be nothing for the jury to “skip.”
In my view, an example where the “stop rule” logic would come into play would be where a jury convicted the defendant of intentional second-degree murder, while rejecting a lesser included offense instruction on unintentional but recldess second-degree murder, and the defendant complains on appeal that the district court should have given an unrequested reckless involuntary manslaughter instruction. The jury had a choice between an intentional tolling and an unintentional but recldess tolling and chose intentional. The juiy’s rejection of one severity level of recklessness logically eliminated a yet lesser version of recldess homicide. Accordingly, the failure to instruct on recldess involuntary manslaughter would not have been clearly erroneous because a conviction on that crime would have been logically inconsistent with the juiy’s rejection of reckless second-degree murder. We simply do not have such foreclosure in this case.
Turning to the issue of the predeath photograph of A.D., I have to acknowledge that the majority’s holding—that a photograph of a victim taken before the tolling is relevant because tire State has to prove the identity of the victim—is but a continuation of such pronouncements from prior Kansas cases. But I must also acknowledge that I am unable to understand the logic of such a declaration.
“Relevance is the threshold issue any time evidence is evaluated for admission into the record.” State v. Huddleston, 298 Kan. 941, 959, 318 P.3d 140 (2014). Statutorily, relevance is defined as evi *539 dence which has “any tendency in reason to prove any material fact.” K.S.A. 60-401(b). But we have gone further, dividing relevance into two components, materiality and probativity, and explaining that evidence is material when the fact it supports is in dispute or is an issue in the case, and that evidence is “probative when it has a logical tendency to prove a material fact. State v. Prine, 297 Kan. 460, 477, 303 P.3d 662 (2013); State v. Reid, 286 Kan. 494, 504-06, 186 P.3d 713 (2008); State v. Garcia, 285 Kan. 1, 14, 169 P.3d 1069 (2007).” Huddleston, 298 Kan. at 959.
I fail to see how a photograph depicting what a person looked like prior to the murder has any tendency in reason to prove the identity of the slain person. If the identity of the human being found slain and burned at the asphalt plant was a material fact that the State was required to prove, a predeath photograph of A.D. would not make it more probable than not that the burned corpse was A.D. If the defense had called 20 mothers to the stand to testify that the school picture they were handed depicted the image of their respective daughter, would that have been relevant to the identity of the murder victim? Of course not. The only reason that A.D.’s mother’s identification of the predeath photograph meant anything to the jury was that A.D. had already been identified as the human being found slain and burned at the asphalt plant.
And the fact that A.D. was, in fact, the victim was uncontested, so it is inscrutable to me that the majority would view a predeath picture as material to the undisputed fact of victim identity. Moreover, if the State wanted to prove the victim’s identity with evidence, in lieu of the defense stipulation on that fact, then it had to prove the identity of the slain body. The State had no legitimate reason for showing the jury what the victim looked like before the murder; the only discernable purpose for such a photograph would be to play to the jury’s sympathy.
In short, I would not condone tire State’s ploy, albeit I would find the error to be harmless here.