NOT DESIGNATED FOR PUBLICATION

No. 120,394

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

TIMOTHY RUSSELL FROBISH,
*Appellant*.

MEMORANDUM OPINION

Appeal from Cherokee District Court; OLIVER KENT LYNCH, judge. Opinion filed October 16, 2020. Affirmed in part and reversed in part.

*Ryan J. Eddinger*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before MALONE, P.J., BUSER and POWELL, JJ.

POWELL, J.: Timothy Russell Frobish was convicted by a jury of his peers of several sex offenses—including aggravated indecent liberties with a child and rape—criminal threat, endangering a child, and drug offenses. Subsequently, Frobish sought a new trial on numerous grounds, one of those being a claim that his trial counsel was ineffective. The district court denied his request; Frobish now appeals, claiming his trial counsel's ineffectiveness entitles him to a new trial. He also asserts that his criminal threat conviction is unconstitutional. After a careful review of the record, we agree with Frobish that his conviction for reckless criminal threat is unconstitutional and must be reversed. We affirm the district court in all other respects.

1

Frobish and his wife or girlfriend (the record is unclear) were family friends of B.G. and her children, 11-year-old son A.G. and 9-year-old daughter C.G. C.G. enjoyed playing with Frobish's infant son. On February 26, 2013, Frobish was at B.G.'s house while the children were at home because of a snow day. A.G. and C.G. asked their mother if they could stay the night at Frobish's house. C.G. wanted to see Frobish's son. She packed an overnight Walmart sack that included a white sports bra.

A.G. and C.G. went to bed around 9:30 p.m., following their mother's instructions since the next day was likely a school day. After everyone was in bed, Frobish entered the room where A.G. and C.G. were sleeping and approached C.G., holding a pocketknife against his leg. C.G. testified at trial that the knife scared her. Frobish approached her bed and reached under her shirt. Frobish groped C.G.'s breast over her bra and tried to reach under her bra, but C.G. scooted away. He left when his son woke up his wife.

Later, Frobish returned and put his hand down C.G.'s pants. At times, his hands were underneath her underwear. He was interrupted and left the room when his son woke up again.

Frobish returned a third time and again put his hand down C.G.'s pants, getting closer to her vagina. Shortly after he began, Frobish got off the bed and left. C.G. got up and shut herself in the bathroom for the rest of the night.

At trial, A.G. testified that when he woke up in the morning C.G. was asleep in the same bed that she fell asleep in the night before. He woke up a few times during the night but did not see or hear anything unusual.

The next morning, Frobish dropped off A.G. and C.G. at their mother's house around 6:30 a.m. but did not come inside. Once inside, C.G. asked B.G. if they could talk privately and told her Frobish touched her inappropriately. B.G. called the police, and Detective Jessica Prater came to B.G.'s house. After speaking with her mother for a while, C.G. began to have difficulty talking about the incident, and B.G. had her write a note to describe what happened. B.G. then handed the note to Prater.

The police executed a search warrant at Frobish's home and seized two bras. At trial, C.G. identified both bras as belonging to her. One was the white sports bra she packed in her overnight bag and the other was found hidden in a hole in the wall. Both bras tested positive for Frobish's semen.

Frobish was charged with two counts of aggravated indecent liberties with a child, one count of rape in the alternative, criminal threat, three counts of endangering a child, possession of a controlled substance, and possession of drug paraphernalia.

A jury trial was held on January 27-30, 2015. Prater testified about her encounter with B.G. and C.G. following B.G.'s call to the police and read C.G.'s note into evidence. In the note, C.G. wrote that Frobish pulled down her pants twice and touched her "weird." A social worker also testified about her interview with C.G. at the Child Advocacy Center in Pittsburg, Kansas, about the touchings. The interview was recorded and admitted into evidence.

Following the trial, the jury returned guilty verdicts on all counts. After the verdict, Frobish orally moved for a new trial but agreed to file a written motion at the district court's request. In his written motion, among a number of issues raised, Frobish alleged his defense counsel was ineffective for not moving to exclude evidence of the bras as irrelevant. The district court denied the motion. Frobish was sentenced to a hard 25 sentence to be served consecutively to his criminal threat sentence. No sentence was

3

imposed on the alternative count of attempted rape, and the sentences in the other counts ran concurrently.

Frobish timely appeals.

ANALYSIS

On appeal, Frobish challenges the district court's decision not to grant him a new trial because he claims his trial counsel was ineffective. For the first time, he also claims his criminal threat conviction is unconstitutional in light of the Kanas Supreme Court's recent decision in *State v. Boettger*, 310 Kan. 800, 450 P.3d 805 (2019), *cert. denied* 140 S. Ct. 1956 (2020).

I.      DID THE DISTRICT COURT ERR BY DENYING FROBISH'S MOTION FOR A NEW TRIAL?

Frobish's motion before the district court listed several reasons entitling him to relief. Before us, Frobish only argues the district court should have granted his motion for a new trial because his trial counsel was ineffective for failing to prevent the State from introducing evidence of C.G.'s two bras containing Frobish's DNA. This deficient representation was prejudicial, according to Frobish, because the State used the evidence to inflame the jury and caused it to assume he possessed a character that would likely lead him to sexually assault children. Frobish also asserts the district court erred in adopting the State's arguments when denying his motion because the State's arguments were distinguishable from this case.

A district court "may grant a new trial to the defendant if required in the interest of justice." K.S.A. 2019 Supp. 22-3501(1). An order denying a motion for a new trial is reviewed for abuse of discretion. *State v. Ashley*, 306 Kan. 642, 650, 396 P.3d 92 (2017).

4

A.      *Ineffective Assistance of Counsel*

When the district court conducts an evidentiary hearing on claims of ineffective assistance of counsel, we review the district court's factual findings using a substantial competent evidence standard. The district court's legal conclusions based on those facts are subject to unlimited review. "'Substantial competent evidence is legal and relevant evidence a reasonable person could accept to support a conclusion.'" *State v. Butler*, 307 Kan. 831, 853, 416 P.3d 116 (2018).

A criminal defendant's "'right to counsel is the right to the effective assistance of counsel.'" *Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prove ineffective assistance of counsel, a defendant must show that "(1) counsel's performance was deficient and (2) counsel's deficient performance was sufficiently serious to prejudice the defense and deprive the defendant of a fair trial." *Edgar v. State*, 294 Kan. 828, 837, 283 P.3d 152 (2012). A defendant must satisfy both elements to succeed on an ineffective assistance of counsel claim. *Strickland*, 466 U.S. at 687.

1.      *Deficient performance*

The performance prong requires an inquiry as to "whether counsel's assistance was reasonable considering all the circumstances." 466 U.S. at 688. The defendant must show defense counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." 466 U.S. at 687. "Judicial scrutiny of counsel's performance must be highly deferential" and strive "to eliminate the distorting effects of hindsight . . . . [A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689.

Strategic choices made after a thorough investigation of the law and facts, including how to conduct cross-examination, what motions to make, and all other strategic and tactical decisions are the "'exclusive province'" of counsel and are "'"virtually unchallengeable."'" *State v. Johnson*, 304 Kan. 924, 951-52, 376 P.3d 70 (2016); see *Edgar*, 294 Kan. at 838. It is the defendant's burden to show defense counsel's alleged deficiencies are not the result of trial strategy. *Johnson*, 304 Kan. at 952. But invoking "the word 'strategy' does not insulate" defense counsel's performance from attack, especially when defense counsel lacks the information to make an informed decision due to counsel's own deficient investigation. *Edgar*, 294 Kan. at 839.

Frobish alleges his defense counsel provided ineffective assistance because he did not seek to exclude or prevent the admission of the evidence that two of C.G.'s bras were found at his house with his semen on them. Had his trial counsel done so, Frobish argues, this evidence would have been excluded because it was not relevant. As we see it, Frobish cannot establish trial counsel's deficient performance, the first prong of the ineffective assistance of counsel test, unless he first demonstrates this evidence was inadmissible.

Relevant evidence is any evidence having any reasonable tendency to prove any material fact. K.S.A. 60-401(b). "'Relevance has two elements: probative value and materiality. Evidence is probative if it . . . contributes towards proof' and "is material if it tends to establish a fact that is at issue and is significant under the substantive law of the case.'" *State v. McCormick*, 305 Kan. 43, 47, 378 P.3d 543 (2016).

At trial, the State introduced two bras identified by C.G. as belonging to her. DNA testing revealed Frobish's semen on both bras. Frobish argues the evidence was irrelevant because there was no allegation Frobish ejaculated during the alleged incidents with C.G. or that he removed her bra. Frobish argues the evidence should have been excluded because it had no logical connection to the charged offenses.

Unsurprisingly, the State rejects these arguments. As noted, the bras had Frobish's semen on them, and the State argues this leads to the reasonable conclusion that Frobish ejaculated on the bras. According to the State, it also supports the reasonable inference that Frobish was sexually attracted to C.G., making it more likely he committed sexual acts against C.G.

When a defendant is accused of a sex offense under article 54, 55, or 56 of chapter 21 of the Kansas Statutes Annotated, "evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative." K.S.A. 2019 Supp. 60-455(d); see *State v. Prine*, 297 Kan. 460, 475, 303 P.3d 662 (2013). This subsection reflects Kansas' "common law tradition" to "use a defendant's prior sexual crimes to prove the defendant's lustful disposition as an exception to the general prohibition of using prior crimes to prove propensity." *State v. Boysaw*, 52 Kan. App. 2d 635, 647, 372 P.3d 1261 (2016).

Frobish was charged with two counts of aggravated incident liberties with a child under 14 years of age under K.S.A. 2012 Supp. 21-5506(b)(3)(A), which defines aggravated incident liberties with a child under 14 years of age as "[a]ny lewd fondling or touching of the person of either the child or the offender, done or submitted to with the intent to arouse or to satisfy the sexual desires of either the child or the offender, or both." Thus, for each count, the State had to prove the action was committed with the intent to arouse or satisfy the sexual desires of either C.G. or Frobish.

Given the elements the State was required to prove, the State has the better relevancy argument. In Frobish's house were two bras belonging to C.G., and both tested positive for Frobish's semen. It is reasonable to conclude the semen came from Frobish ejaculating on the bras. It also supports a reasonable inference that Frobish had C.G.'s bras and his semen was on those bras because he was sexually attracted to C.G. The fact he was sexually attracted to C.G. makes it more likely the three incidents of touching

C.G. on her breast and under her pants were done with the intent to satisfy either C.G.'s or Frobish's sexual desire. See *State v. Bowen*, 299 Kan. 339, 349-50, 323 P.3d 853 (2014) ("Evidence of these [prior] crimes made more probable the truth of the State's proposition that Bowen had a disposition to sexually abuse female victims approximately the same age as M.B."); *State v. Smith*, 299 Kan. 962, 971, 327 P.3d 441 (2014) ("The prior convictions for sex crimes involving a child had a tendency in reason to prove Smith committed the acts here with the specific intent to arouse or satisfy his own, H.D.'s, or M.M.'s sexual desires.").

K.S.A. 2019 Supp. 60-455(d) allows the admission of any act of sexual misconduct if it is relevant and probative. Because the State was required to prove Frobish touched C.G. with the intent to arouse or satisfy a sexual desire, the evidence of his semen on her bras found in his house is relevant.

However, Frobish also argues that even if we determine the evidence was relevant, trial counsel was still ineffective because it was inadmissible character evidence under K.S.A. 60-447 or inadmissible prior bad acts evidence under K.S.A. 2019 Supp. 60-455. The problem with these arguments is that Frobish did not raise them before the district court in his motion for a new trial. Issues not raised below are waived on appeal unless permitted under a specific exception. Moreover, parties must invoke an exception to the general rule in their brief. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015); see Supreme Court Rule 6.02(a)(5) (2020 Kan. S. Ct. R. 34). Frobish does not explain why we should consider the merits of these arguments despite them not being raised below. As a result, Frobish has waived them. But even if properly preserved, the evidence still would have been admissible under K.S.A. 2019 Supp. 60-455(d) because it was relevant to Frobish's intent.

Frobish then goes even further and argues that even if the evidence had been admissible under K.S.A. 2019 Supp. 60-455(d), his trial counsel was still ineffective for

failing to object to the admission of the evidence because had counsel done so, the district court would have had to at least weigh the probative value of the evidence against its prejudicial effect. See K.S.A. 60-445. We observe that almost all incriminating evidence is prejudicial, but Frobish offers no explanation how the risk of undue prejudice from the semen on the bras would substantially outweigh the probative value of such evidence. In fact, the probative value of such evidence likely outweighed any prejudice as trial counsel highlighted there had been no evidence that Frobish either took off C.G.'s bra or that he ejaculated when groping C.G.

At the evidentiary hearing on the motion for a new trial, trial counsel explained he did not challenge the bras' admission because he did not believe they were helpful to the State's case. Instead, his strategy was to show how the State could not use the bras to prove any crime. Frobish seizes on trial counsel's admission as evidence that counsel's performance was deficient for not attempting to exclude the bras. But the question of whether counsel's performance was deficient is an objective one. A posttrial opinion admitting to an allegedly deficient action does not satisfy that test. See *Chandler v. United States*, 218 F.3d 1305, 1315 n.16 (11th Cir. 2000) ("Because the standard is an objective one, that trial counsel (at a post-conviction evidentiary hearing) admits that his performance was deficient matters little."). Because the evidence was admissible, Frobish has failed to establish that his trial counsel's performance was deficient for failing to try to exclude it. As Frobish's trial counsel was not deficient, he cannot prove his counsel was ineffective.

2.      *Prejudice*

Alternatively, even if Frobish could show trial counsel's performance was deficient, he cannot prove prejudice. To succeed on the prejudice prong, a defendant must show "there is a reasonable probability that, but for counsel's unprofessional errors, the

9

result of the proceeding would have been different. A reasonable probability is [one] sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

Frobish argues he was prejudiced because the State used C.G.'s bras with his semen to inflame the jury into convicting him. But the bras were a small part of the overall evidence. Even without the admission of the bras, the jury likely still would have believed C.G.'s largely consistent testimony. C.G.'s recounting of the events was provided to the jury in three different formats:  (1) her testimony; (2) her letter to B.G. the morning after; and (3) her video interview with a social worker at the Child Advocacy Center. The video and letter were not included in the record on appeal. See *State v. Miller*, 308 Kan. 1119, 1157, 427 P.3d 907 (2018) (holding party asserting prejudicial error has burden to designate record to show error and not doing so results in claim failing). Nevertheless, the testimony at trial supports the proposition that the video interview and letter were consistent with her testimony. C.G.'s recounting of the details of Frobish touching her are consistent:  First, he touched her breast; then came back and put his hand down her pants; and then came back again and put his hands down her pants. Frobish cannot show a reasonable probability that but for the admission into evidence of the bras, his trial would have ended differently.

Because he cannot satisfy either prong of *Strickland*'s ineffective assistance of counsel claim, Frobish has failed to establish his trial counsel was ineffective.

B.      *Adopting the State's arguments*

Finally, Frobish argues the district court erred because it did not make its own findings of fact and conclusions of law, choosing to adopt the State's arguments instead. Frobish claims this was erroneous because the State's arguments were distinguishable from this case. Although the district court did choose to adopt the State's reasoning, the record reflects the district court considered the evidence. Additionally, the district judge

was the same judge who heard the trial and was familiar with the evidence. As such, the district court did not err by not making its own findings of facts and conclusions of law.

II.      SHOULD FROBISH'S CRIMINAL THREAT CONVICTION BE REVERSED AS UNCONSTITUTIONAL UNDER *BOETTGER*?

Frobish filed a supplemental brief asserting for the first time that his criminal threat conviction should be reversed under *Boettger*. The State concedes the conviction is unconstitutional but seeks to preserve its argument because it has filed a petition for certiorari to the United States Supreme Court. The United States Supreme Court has since denied the petition. See *Kansas v. Boettger*, 140 S. Ct. 1956 (2020).

Frobish was charged with criminal threat contrary to K.S.A. 2012 Supp. 21-5415(a)(1), the relevant portion of which states:

> "(a) Criminal threat is any threat to:
>
>> "(1) Commit violence communicated with intent to place another in fear, or to cause the evacuation, lock down or disruption in regular, ongoing activities of any building, place of assembly or facility of transportation, or in reckless disregard of the risk of causing such fear or evacuation, lock down or disruption in regular, ongoing activities."

At trial, the district court only instructed the jury on the "reckless disregard" portion of criminal threat, and the jury convicted Frobish of reckless criminal threat.

In *Boettger*, the Kansas Supreme Court addressed a challenge to the portion of the statute that criminalized a threat communicated "in reckless disregard of the risk of causing" fear. 310 Kan. at 816-18. *Boettger* held the reckless criminal threat portion of K.S.A. 2018 Supp. 21-5415(a)(1) was unconstitutionally overbroad. 310 Kan. at 818.

11

While issues, even constitutional ones, normally may not be raised for the first time on appeal, an exception exists when the issue, as this one is, involves only a legal question which is dispositive of the appeal and would serve the ends of justice. See *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). Given that Frobish was convicted of reckless criminal threat and our Supreme Court has declared this crime to be unconstitutional, we must reverse his conviction.

The district court's denial of the motion for a new trial is affirmed. Frobish's conviction for reckless criminal threat is reversed.

Affirmed in part and reversed in part.