NOT DESIGNATED FOR PUBLICATION

No. 115,632

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JAMES EDWIN SPEER,
*Appellant*.

MEMORANDUM OPINION

Appeal from Pawnee District Court; BRUCE T. GATTERMAN, judge. Opinion filed August 24, 2018. Affirmed.

*Corrine E. Gunning*, of Kansas Appellate Defender Office, for appellant.

*Natalie Chalmers*, assistant solicitor general, *Rachel Pickering,* assistant solicitor general, and *Derek Schmidt*, attorney general, for appellee.

Before MCANANY, P.J., PIERRON, J., and WALKER, S.J.

PER CURIAM:  A jury convicted James Edwin Speer of two counts of aggravated indecent liberties with a child. Speer appeals, arguing: (1) the admission into evidence of his other sexual misconduct with the victim under K.S.A. 2017 Supp. 60-455(d) was unconstitutional; (2) the prejudicial effect of the sexual misconduct evidence outweighed its probative value; and (3) the district court erred in denying his motion for new trial based on ineffective assistance of counsel. Finding no error, we affirm.

On July 2, 2013, a member of the Hodgeman County Sheriff's Office stopped Speer, who was 21 years old, because of a report of reckless driving. M.V., a 14-year-old girl, was also riding in Speer's truck. The officer ultimately arrested Speer and took him

to Hodgeman County Jail. The Hodgeman County Sheriff's Office detained M.V. at her father's request so he could pick her up.

Undersheriff Thea Ratliff transported M.V. to the sheriff's office from the traffic stop. M.V. first told Ratliff that she and Speer were good friends, and she had baby-sat for his niece and nephew. She eventually stated she had been in a romantic relationship with him, and the two had had sexual intercourse in his home in Pawnee County.

Ratliff asked M.V. if she would be willing to provide a written statement about her relationship with Speer, and M.V. agreed. M.V. wrote that she met Speer on June 24, and they first had sex on June 28 or 29. They spent a lot of time together in July. They had a big fight after M.V. read an entry in Speer's journal talking about another girl. M.V. became angry and trashed Speer's apartment. They broke up but eventually "worked things out." M.V. said she and Speer had slept together, and she had spent the night at his apartment several times. She said she loved him, and she would always have feelings for him. She also wrote "I know that he's hurting and [he's] scared[.] I just don[']t want him to think any different of me because of this night."

Based on M.V.'s statement, Speer was transferred to the custody of the Pawnee County Sheriff's Office. Detective Jeff King interviewed Speer there in the early morning hours of July 3, 2013. Speer denied that he was in a romantic relationship with M.V. or that he had had sexual intercourse with her.

The day after the traffic stop, Sarah Schenek interviewed M.V. at the Child Advocacy Center. During the interview, M.V. talked about her romantic and sexual relationship with Speer. She described two instances of sexual intercourse, both occurring in Speer's apartment. She stated the couple had problems and had broken up after she found his journal talking about other women. They remained friends, however, and eventually they reconnected.

2

After the interview, Debra Higgins, a sexual assault nurse, performed a SANE/SART exam on M.V. M.V. first told Higgins that the last time she had sex with Speer was three weeks before. Later, M.V. told Higgins that she and Speer stopped during their drive the night before and had unprotected sex. Higgins obtained a sample during a genital exam to submit for DNA testing. Testing established semen was present in M.V.'s vagina, and the DNA profile was consistent with Speer.

About a week later, M.V. told King that she and Speer had been outside Jetmore in Hodgeman County when they had sex in his truck. M.V. also clarified that her statement should have said that she met Speer on May 24, 2013, and they had sex on May 28 or 29. She said that she and Speer also had sexual intercourse on June 20.

The State charged Speer with two counts of aggravated indecent liberties with a child under K.S.A. 2012 Supp. 21-5506(b), based on the two acts of sexual intercourse in Speer's home in Pawnee County. Before trial, the State moved to admit evidence of M.V. and Speer's sexual contact in Hodgeman County under K.S.A. 2014 Supp. 60-455(d). Speer objected, mainly arguing he had never been convicted for this act and the evidence was unduly prejudicial. After an evidentiary hearing, the district court found that testimony about the Hodgeman County incident was relevant and probative and thus admissible under K.S.A. 2014 Supp. 60-455(d). After considering more arguments, the court also held that the DNA evidence from M.V.'s SANE/SART exam was relevant and more probative than prejudicial.

At a three-day trial, in addition to testimony from Ratliff, King, Schenek, Higgins, and M.V., the State presented testimony from John and Sarah Hassell. The Hassells were like a second family to M.V. and lived close to Speer for a short time in Larned in Pawnee County. The Hassells knew about M.V. and Speer's relationship. They told M.V. and Speer that the relationship was inappropriate, but they did not tell M.V.'s father or report it to any authorities.

3

John testified that Speer approached him once and asked how many sexual partners M.V. had had. John replied that he did not know because he did not have those kinds of conversations with her. According to John, Speer told him M.V. had said she had been with seven or eight other people, and this surprised Speer because "she's really tight." Sarah testified that M.V. told her that M.V. and Speer had sex at his apartment.

The State also entered several entries from Speer's journal into evidence. In one entry, dated June 24, 2013, Speer wrote that he was cold when he woke up that morning, and "the only thing I could think about is how I wished [M.V.] was here. Her petite little body is so comfortable to cuddle with." About Sara and John Hassell, Speer wrote, "these people got involved in the little relationship I have with [M.V.]" He noted that he and M.V. "were hiding our relationship because of her age." He also wrote, "If I tell [M.V.] I love her[,] she asks why I have a 'tone.'"

Before the defense's case-in-chief began, Speer waived his right to testify on the record outside the presence of the jury. The defense then called one witness, Speer's sister, Megan Speer. Megan testified that she met M.V. in June 2013. Megan's kids had stayed with Speer for two weeks that month, and M.V. had come along when Speer drove them back home. Speer introduced M.V. as his friend. Megan understood that M.V. helped Speer clean his home and watch the kids while they were staying with him. She never got the impression that M.V. and Speer were in a relationship or sexually intimate, and her kids never said anything to lead her to believe this.

The defense also entered into evidence a Facebook message M.V. had sent to Megan. In the message, M.V. said she and Speer "never did anything together." She also told Megan, "I'm doing anything and everything to get him out of this, and for you to know I did not plan for this to happen." M.V. explained she sent the message to Megan because she knew Speer had told Megan he was just friends with M.V. M.V. said she "wanted to keep it that way." She said she did not want Speer to go to jail, and she was originally planning to lie and say she was not having sex with him.

4

The jury convicted Speer of two counts of aggravated indecent liberties with a child. Following Speer's conviction, defense counsel, Sam Kepfield, moved for a new trial and a judgment of acquittal. Acting pro se, Speer also moved for a new trial, arguing Kepfield had provided ineffective assistance of counsel. Because of the conflict of interest, Kepfield withdrew and the district court appointed new counsel for Speer. After an evidentiary hearing, at which Speer and Kepfield both testified, the district court denied Speer's motion, finding Kepfield adequately represented Speer at trial.

Speer also moved for a downward durational departure from the presumptive sentence of 233 months in prison. Based on Speer's arguments and M.V.'s victim statement, the district court granted the departure, sentencing Speer to a controlling term of 130 months in prison.

Speer appeals his convictions, sentence, and the denial of his pro se motion for new trial.

*K.S.A. 2017 Supp. 60-455(d) and Due Process*

On appeal, Speer argues the admission of propensity evidence in sex crime cases under K.S.A. 2017 Supp. 60-455(d) violates an accused's rights to due process of law and to know the nature of the charged crime under §§ 10 and 18 of the Kansas Constitution Bill of Rights. In *State v. Boysaw*, 52 Kan. App. 2d 635, Syl. ¶ 5, 372 P.3d 1261 (2016), *rev. granted* 306 Kan. at 1321 (2017), the court considered this argument and determined that "K.S.A. 2015 Supp. 60-455(d) does not violate a defendant's due process rights and is constitutional." See also *State v. Toothman*, No. 115,716, 2017 WL 5016206, *5-7 (Kan. App. 2017) (unpublished opinion), *petition for rev. filed* December 4, 2017; *State v. Razzaq*, No. 114,325, 2016 WL 6139148, at *2-3 (Kan. App. 2016) (unpublished opinion), *rev. granted* 307 Kan. 992 (2017). Speer argues that *Boysaw* was wrongly decided, and he asks us to depart from *Boysaw*'s reasoning. He notes that one panel of the

Court of Appeals can disagree with another panel. See *State v. Urban*, 291 Kan. 214, 223, 239 P.3d 837 (2010). He also points out that the Kansas Supreme Court has granted review of *Boysaw*. Even so, the *Toothman* court adopted *Boysaw*'s reasoning after the Kansas Supreme Court granted review. See 2017 WL 5016206, at *5-7.

*Standard of Review and Preservation of Issue*

Speer acknowledges he did not specifically challenge the constitutionality of K.S.A. 2017 Supp. 60-455(d) before the district court but asks us to hear his argument for the first time on appeal. Generally, constitutional arguments raised for the first time on appeal are not properly before this court. *State v. Godfrey*, 301 Kan. 1041, 1043, 350 P.3d 1068 (2015). But this rule has several exceptions, including: (1) the newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights; and (3) the judgment of the trial court may be upheld on appeal despite its reliance on the wrong ground or having assigned a wrong reason for its decision. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). As the constitutionality of a statute is a question of law, we may review this issue for the first time on appeal. See *Toothman*, 2017 WL 5016206, at *5 (addressing constitutionality of K.S.A. 60-455[d] for first time on appeal because constitutionality of statute is question of law).

As for the merits, Speer asks us to reconsider *Boysaw* and find that K.S.A. 2017 Supp. 60-455(d) is unconstitutional. A statute's constitutionality is a question of law subject to unlimited review. We presume statutes are constitutional and must resolve all doubts in favor of a statute's validity. Courts must interpret a statute in a way that makes it constitutional if any reasonable construction would maintain the Legislature's apparent intent. *State v. Petersen-Beard*, 304 Kan. 192, 194, 377 P.3d 1127, *cert. denied* 137 S. Ct. 226 (2016).

6

*K.S.A. 2017 Supp. 60-455(d) is Constitutional*

K.S.A. 2017 Supp. 60-455 governs the admission of evidence about other crimes or civil wrongs. In 2009, the Kansas Legislature added subsection (d). That subsection states:

> "(d) Except as provided in K.S.A. 60-445, and amendments thereto, in a criminal action in which the defendant is accused of a sex offense under articles 34, 35 or 36 of chapter 21 of the Kansas Statutes Annotated, prior to their repeal, or articles 54, 55 or 56 of chapter 21 of the Kansas Statutes Annotated, or K.S.A. 2017 Supp. 21-6104, 21-6325, 21-6326 or 21-6419 through 21-6422, and amendments thereto, evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative."

The Kansas Supreme Court has interpreted subsection (d) to allow the admission of other sexual misconduct to show propensity in sex crime cases. *State v. Prine*, 297 Kan. 460, 476, 303 P.3d 662 (2013).

Speer's challenges to K.S.A. 2017 Supp. 60-455(d) mirror those of the defendant in *Boysaw*. The State charged Boysaw with aggravated indecent liberties with a child. The State moved to admit Boysaw's two prior sex-related offenses. The district court found the more recent conviction had a "striking similarity" to Boysaw's current charges and allowed its admission to show propensity through a limited stipulation. 52 Kan. App. 2d at 636-37. Boysaw appealed his conviction, arguing the admission of propensity evidence under K.S.A. 2015 Supp. 60-455(d) violated his right to a fair trial and due process under the Kansas Constitution. The *Boysaw* court ultimately held that K.S.A. 2015 Supp. 60-455(d) was constitutional. 52 Kan. App. 2d 635, ¶ 5.

The *Boysaw* court looked to federal caselaw on Federal Rules of Evidence 413 and 414, which K.S.A. 2017 Supp. 60-455(d) models. Federal Rule of Evidence 413(a) states, "In a criminal case in which a defendant is accused of a sexual assault, the court may

admit evidence that the defendant committed any other sexual assault. The evidence may be considered on any matter to which it is relevant." Federal Rule of Evidence 414(a) provides a similar rule for child molestation cases. The *Boysaw* court noted that while the United States Supreme Court has not ruled on the constitutionality of Rule 413 or 414, four federal circuit courts had upheld one or the other, citing *United States v. Julian*, 427 F.3d 471, 486 (7th Cir. 2005); *United States v. LeMay*, 260 F.3d 1018, 1026 (9th Cir. 2001); *United States v. Mound*, 149 F.3d 799, 800-01 (8th Cir. 1998); and *United States v. Enjady*, 134 F.3d 1427, 1431 (10th Cir. 1998). Since *Boysaw*, the Second Circuit has also held Rule 413 is constitutional. *United States v. Schaffer*, 851 F.3d 166, 180 (2d Cir.), *cert. denied* 138 S. Ct. 469 (2017).

The federal courts noted that Rule 413 and 414 are subject to Federal Rule of Evidence 403. That rule requires a district court to determine whether the probative value of any evidence "is substantially outweighed by a danger of . . . unfair prejudice." Fed. R. Evid. 403. The federal courts determined that Rule 413 and 414 are constitutional because Rule 403 provides the necessary safeguards for a defendant's due process rights. See *Schaffer*, 851 F.3d at 180. Following this reasoning, the *Boysaw* court held that K.S.A. 2015 Supp. 60-445, which the Kansas Supreme Court has interpreted as similar to Rule 403, provides a similar safeguard. 52 Kan. App. 2d at 645 (citing *State v. Lee*, 266 Kan. 804, 814, 977 P.2d 263 [1999]). As a result, the court found K.S.A. 2015 Supp. 60-455(d) constitutional. 52 Kan. App. 2d at 646.

Speer responds that rules like Rule 403 "amount[] to nearly no safeguard at all" because courts rarely exclude evidence under those rules. But just because those rules do not normally result in the exclusion of evidence does not mean they provide no protection. As the Ninth Circuit explains,

> "the admission of prejudicial evidence, without more, cannot be unconstitutional. All evidence introduced against a criminal defendant might be said to be prejudicial if it tends to prove the prosecution's case.

8

. . . .

"The introduction of such evidence can amount to a constitutional violation only if its prejudicial effect far outweighs its probative value." *LeMay*, 260 F.3d at 1026.

As long as Rule 403 excludes "[p]otentially devastating evidence of little or no relevance," rules permitting the admission of propensity evidence in sex crime cases are constitutional. 260 F.3d at 1027. The same goes for K.S.A. 60-445 and K.S.A. 2017 Supp. 60-455(d).

Speer also asks us to not rely on federal law in resolving this issue. Instead, Speer urges us to follow Iowa and Missouri, whose highest courts held that statutes much like K.S.A. 2017 Supp. 60-455(d) violated their state constitutions. *State v. Cox*, 781 N.W.2d 757, 768 (Iowa 2010); *State v. Ellison*, 239 S.W.3d 603, 606-08 (Mo. 2007). He also contends that the *Boysaw* court erred in declining to follow these cases.

In *Cox*, the Iowa Supreme Court held a statute allowing evidence of prior acts of sexual abuse to show propensity violated the Iowa Constitution's due process clause. 781 N.W.2d at 768. But the *Boysaw* court found *Cox* unpersuasive. 52 Kan. App. 2d at 646-47. It noted that Iowa had traditionally disallowed the admission of prior sexual offenses to show propensity. In contrast, Kansas courts had historically permitted propensity evidence in sex crime cases under the lustful disposition exception. This practice ended only when the Kansas Legislature enacted the original version of K.S.A. 60-455 in 1963.

Speer counters *Boysaw*'s reasoning by arguing that Kansas and Iowa in fact have similarly ambiguous histories about the admission of propensity evidence in sex crime cases. In support, he points to *State v. Spaulding*, 313 N.W.2d 878 (Iowa 1981). There, the Iowa Supreme Court allowed the admission of a prior sexual offense without linking it to an issue other than propensity. 313 N.W.2d at 881. Yet the *Cox* court identified *Spaulding* as somewhat of an outlier. The court noted it had typically required prior

9

sexual offenses to be relevant to some issue other than propensity, and it continued this practice after *Spaulding*. *Cox*, 781 N.W.2d at 765-66.

Speer also points out that some Kansas cases acknowledging the lustful disposition exception also found the evidence admissible for other purposes. *State v. Waldron*, 118 Kan. 641, 649, 236 P. 855 (1925); *State v. Borchert*, 68 Kan. 360, 361-62, 74 P. 1108 (1904). But this does not undermine the conclusion that Kansas courts have historically allowed propensity evidence in sex crime cases. Speer's argument on this point is unconvincing.

Next, Speer cites *Ellison*, in which the Missouri Supreme Court invalidated a statute allowing propensity evidence in certain child sex crimes. 239 S.W.3d at 606-08. As with *Cox*, the *Boysaw* court found *Ellison* unpersuasive. It explained that while § 10 of the Kansas Constitution Bill of Rights and § 18(a) of the Missouri Constitution have similar language, the Missouri Supreme Court has interpreted their constitution more broadly. *Boysaw*, 52 Kan. App. 2d at 648-49. The Missouri Supreme Court has held the Missouri Constitution bans the admission of propensity evidence. *Ellison*, 236 S.W.3d at 606-08. Unlike Missouri, the Kansas Supreme Court has interpreted § 10's right of an accused "to demand the nature and cause of the accusation against him" as guaranteeing only an indictment specific enough to inform the accused of the pending charge or charges. See *State v. Wright*, 259 Kan. 117, 125, 911 P.2d 166 (1996).

Speer contends that while the Kansas Supreme Court has not yet broadly interpreted §10, it may do so in the future. Even so, our Supreme Court has expressed no intention to depart from its current interpretation. The *Boysaw* court did not improperly distinguish *Ellison* based on current Kansas Supreme Court precedent. See *Toothman*, 2017 WL 5016206, at *6.

Since *Ellison*, Missouri has amended its constitution to allow for propensity evidence in sex crimes cases. The Missouri Supreme Court has held that the state

10

constitutional amendment does not violate the United States Constitution's Due Process Clause. *State v. Williams*, 548 S.W. 3d 275, 285-86 (Mo. 2018).

In conclusion, Speer has provided no compelling argument for us to depart from *Boysaw*'s reasoning. K.S.A. 2017 Supp. 60-455(d) violates no rights under the Kansas Constitution because the district court may exclude evidence of other sexual misconduct if that evidence is unduly prejudicial. As a result, the district court did not err in admitting evidence of Speer's other sexual misconduct.

*Admission of Prior Sex Crimes Evidence*

Speer argues the district court abused its discretion in admitting testimony about him and M.V. having sexual intercourse in Hodgeman County as well as the DNA evidence collected during the SANE/SART exam. Speer asserts the State's case relied heavily on M.V.'s credibility, and the State had no direct evidence of a sexual relationship between M.V. and him beyond her statements. He contends the jury may have convicted him based on the Hodgeman County misconduct because the evidence about the acts in Pawnee County was weak.

Speer notes the district court provided no limiting instruction. However, when the court admits evidence of another act or offense of sexual misconduct under K.S.A. 2017 Supp. 60-455(d), it need not give a limiting instruction. *Prine*, 297 Kan. 460, Syl. ¶ 4.

The State argues the district court did not err because the evidence's probative value outweighs any prejudicial effect. It argues the case centered on M.V.'s credibility, and the DNA evidence corroborated her testimony. This evidence also showed that Speer and M.V. had a sexual relationship, and the misconduct occurred within months of the charged acts. The State adds that the evidence also undermined the credibility of Speer's denial to police that he was in a sexual relationship with M.V.

11

Speer does not challenge the relevance of this evidence. He only contests the district court's decision that the evidence's probative value outweighed its prejudicial effect.

A district court may exclude evidence if the court finds its potential for undue prejudice outweighs its probative value. See K.S.A. 60-445. We review any such decision for an abuse of discretion. See *State v. Lowrance*, 298 Kan. 274, 291, 312 P.3d 328 (2013). A judicial action constitutes an abuse of discretion if (1) no reasonable person would take the district court's view; (2) it is based on an error of law; or (3) it is based on an error of fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Before trial, Speer challenged the State's request to admit testimony and DNA evidence about the sexual misconduct in Hodgeman County. He also made timely objections to the evidence at trial. This issue has been properly preserved for review. See K.S.A. 60-404; *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862 (2016).

*Prejudicial Effect Does Not Substantially Outweigh Probative Value.*

The Kansas Supreme Court has cited with approval several factors from the Tenth Circuit for balancing the probative value of propensity evidence in sex offense cases against its potential for unfair prejudice. These factors include

> "'1) how clearly the prior act has been proved; 2) how probative the evidence is of the material fact it is admitted to prove; 3) how seriously disputed the material fact is; and 4) whether the government can avail itself of any less prejudicial evidence. When analyzing the probative dangers, a court considers: 1) how likely it is such evidence will contribute to an improperly-based jury verdict; 2) the extent to which such evidence will distract the jury from the central issues of the trial; and 3) how time consuming it will be to prove the prior conduct. [Citations omitted].' *United States v. Benally,* 500 F.3d 1085, 1090-91 (10th Cir. 2007) (cited with approval in *Prine*, 297 Kan. at 478)." *State v. Bowen,* 299 Kan. 339, 350*,* 323 P.3d 853 (2014).

12

The Tenth Circuit also provided another list of factors a court may consider in determining the probative value of prior acts, including: "(1) the similarity of the prior acts and the charged acts, (2) the time lapse between the other acts and the charged acts, (3) the frequency of the prior acts, (4) the occurrence of intervening events, and (5) the need for evidence beyond the defendant's and alleged victim's testimony." *Benally*, 500 F.3d at 1090-91. Speer cites a substantively similar list of factors from *Lemay*, 260 F.3d at 1027-28, which the court analyzed in *State v. Young*, No. 102,121, 2013 WL 6839328, at *7 (Kan. App. 2013) (unpublished opinion).

Here, the district court held that testimony about the Hodgeman County misconduct as well as the DNA evidence was relevant and probative and thus admissible under K.S.A. 2017 Supp. 60-455(d). The court found that the DNA evidence was highly probative because it corroborated M.V.'s testimony about a sexual act with Speer on another occasion. It also found that whether M.V. and Speer had engaged in sex acts was a disputed material fact, and the State would prove the act by allowing the jury to make a credibility determination about M.V.'s testimony. Finally, it held that while the State had other less prejudicial evidence, none of it would corroborate M.V.'s testimony.

Same victim, same crime, same time frame.

The district court did not err in finding the other sexual misconduct evidence admissible under K.S.A. 2017 Supp. 60-455(d). The DNA evidence and testimony about Speer and M.V. having sexual intercourse in Hodgeman County was highly probative. This misconduct involved the same victim and the conduct was of the same character as Speer's charged offenses. The misconduct occurred within weeks of the acts at issue. The evidence of this misconduct also corroborated M.V.'s testimony and countered Speer's defense that he and M.V. were not involved in a romantic or sexual relationship.

13

At the same time, this evidence presented little risk of undue prejudice. Prior misconduct involving the same victim and conduct of the same character is unlikely to lead to an improper jury verdict. See *State v. Dern*, 303 Kan. 384, 395, 362 P.3d 566 (2015). In addition, the evidence directly related to a central issue at trial—the nature of M.V. and Speer's relationship. Because this evidence's risk of undue prejudice does not outweigh its probative value, the district court did not err in admitting it.

*Ineffective Assistance of Counsel*

Finally, Speer argues the district court erred in denying his motion for new trial based on ineffective assistance of counsel. In his motion, Speer argued that Kepfield was ineffective because he had failed to (1) call several potential defense witnesses; (2) adequately cross-examine several trial witnesses; (3) introduce exculpatory evidence about when Speer moved to Larned; (4) object to evidence the State presented after an evidentiary deadline; (5) allow Speer to testify; (6) advocate for Speer at trial; and (7) adequately prepare for trial or meet with Speer. The district court held an evidentiary hearing on Speer's motion.

At the hearing, Speer told the court that he was in the Hutchinson Correctional Facility (HCF) for the seven months leading up to his jury trial. Kepfield met with him only once during that time. That meeting was five days before the start of his trial. Speer had received five or six letters from Kepfield. These letters usually only included copies of motions Kepfield had filed. They contained no information about how Kepfield was preparing for trial.

Speer testified that he gave Kepfield a list of about six witnesses he wanted Kepfield to call. Kepfield did not subpoena any of them and only called one of them at trial. Speer also gave Kepfield a lease that showed when Speer had moved to Larned. Speer believed the date on the lease would contradict the dates of the charges, but Kepfield did not introduce it at trial.

14

Speer stated that he told Kepfield many times, both in person and in writing, that he wanted to testify at trial, and he wanted Kepfield to help him prepare. He also told Kepfield three times during trial that he wanted to testify. According to Speer, Kepfield told him "he wasn't going to have me fucking testify because nothing ever good comes by clients testifying in court." When the judge asked Speer at trial if he wanted to testify, Kepfield told Speer to say "No." Speer did not remember Kepfield telling him it was his individual right to testify and only he could waive it, but the district court judge did.

Speer also said that the Disciplinary Administrative Office filed a complaint against Kepfield while Kepfield was representing Speer. Yet Speer did not learn about the complaint until after trial. While doing research for his motion, Speer found a Kansas Supreme Court decision issued the day after Speer's trial finished disciplining Kepfield. Speer stated if he had known about the complaint and the reasons for it, he would have fired Kepfield.

Kepfield testified he had been a member of the Kansas Bar since 1989. He had conducted "forty or fifty jury trials" since 1998, and his practice focused mainly on representing criminal defendants. He did not decline Speer's case because he believed he was capable of representing Speer given his experience with similar cases.

Kepfield testified he was appointed to represent Speer on November 26, 2013, and he continued to represent Speer until the end of the trial in April 2015. He confirmed he only met with Speer once while Speer was in HCF, and that meeting happened a week before trial. During the meeting, Speer gave Kepfield a list of possible witnesses, and Kepfield stated he had time to subpoena them. Kepfield said Speer also gave him a copy of a lease, but Kepfield did not introduce it at trial. He explained that he had done some investigation into the lease, and he did not think it was relevant.

15

Kepfield acknowledged the disciplinary complaint against him. He stated he had not told Speer about it because he believed he did not have to unless sanctions had been imposed. He also explained that based on the billing he submitted to the Board of Indigent Defense Services (BIDS), he had met with Speer for 4.2 hours outside of trial. He noted the bill included no times for consultation, but he thought "that must [be] because I was in constant contact with Mr. Speer and talking with him. I didn't set any time specifically aside for consultation. It is an ongoing process."

Kepfield did not recall if Speer had, at any time, said he wanted to testify at trial. He also denied that he prevented Speer from testifying. He explained that he probably told Speer he does not like his clients to testify because he had seen it "backfire" too many times. He added that he "made it clear to Mr. Speer that if he was absolutely wanting to testify that he could."

The district court ultimately denied Speer's motion. The court explained that Speer complained Kepfield had failed to subpoena witnesses, but Speer had not called those witnesses to testify at the evidentiary hearing or otherwise proffered their testimony. As for the lease, Kepfield had investigated it, and his decision not to offer it was a matter of trial strategy.

The district court noted that Speer and Kepfield gave conflicting testimony on whether Speer had expressed a desire to testify. The court found that Speer's testimony at the evidentiary hearing conflicted with the trial record. The trial record showed that the court had advised Speer that he had a right to testify and asked if he wanted to do so. Speer said he did not. For this reason, the court held that Speer had failed to meet his burden to prove Kepfield kept him from testifying.

The district court also found that Kepfield's contact with Speer was more extensive than Speer claimed. The court acknowledged Kepfield had only met with Speer once in HCF. But the court noted that it held many pretrial hearings at which Speer had an

16

opportunity to consult with Kepfield. As a result, the court held that Kepfield's representation was not deficient, and Speer had failed to show prejudice.

On appeal, Speer argues the district court erred in finding Kepfield's performance was not deficient and Speer had failed to show prejudice. He contends Kepfield did not adequately prepare for trial or call Speer's proposed witnesses. He also claims Kepfield prevented him from testifying at trial. He asserts Kepfield's deficient performance prejudiced him because the witnesses' testimony would have undermined M.V.'s credibility, creating a reasonable possibility of a different outcome.

*Standard of Review*

We review the district court's decision on a motion for new trial for an abuse of discretion. *State v. Williams*, 303 Kan. 585, 595, 363 P.3d 1101 (2016). As stated, a judicial action constitutes an abuse of discretion if (1) no reasonable person would adopt the district court's view; (2) it is based on an error of law—an erroneous legal conclusion guides the district court's discretion; or (3) it is based on an error of fact—substantial competent evidence does not support a fact-finding. *State v. Ward*, 292 Kan. 541, 550, 256 P.3d 801 (2011).

A claim alleging ineffective assistance of counsel presents mixed questions of fact and law. When the district court conducts a full evidentiary hearing on such claims, this court determines whether substantial competent evidence supports the district court's factual findings and whether those findings support the court's legal conclusions. We apply a de novo standard to the district court's conclusions of law. *Fuller v. State*, 303 Kan. 478, 485, 363 P.3d 373 (2015). If the district court made either an error of law or fact in determining that Kepfield did not provide ineffective assistance of counsel, then the court abused its discretion in denying the motion for that reason.

17

To prevail on a claim of ineffective assistance of counsel, a criminal defendant must establish (1) that the performance of defense counsel was deficient under the totality of the circumstances, and (2) prejudice—that there is a reasonable probability the jury would have reached a different result without the deficient performance. *Sola-Morales v. State*, 300 Kan. 875, 882, 335 P.3d 1162 (2014).

Judicial scrutiny of counsel's performance in a claim of ineffective assistance of counsel is highly deferential and requires consideration of all the evidence before the judge or jury. The reviewing court must strongly presume that counsel's conduct fell within the broad range of reasonable professional assistance. *State v. Kelly*, 298 Kan. 965, 970, 318 P.3d 987 (2014). If counsel has made a strategic decision after making a thorough investigation of the law and the facts relevant to the realistically available options, then counsel's decision is virtually unchallengeable. Strategic decisions made after a less than comprehensive investigation are reasonable exactly to the extent a reasonable professional judgment supports the limitations on the investigation. *State v. Cheatham*, 296 Kan. 417, 437, 292 P.3d 318 (2013) (citing *Strickland v. Washington*, 466 U.S. 668, 690-91, 104 S. Ct. 2052, 80 L. Ed. 2d 674 [1984]).

*Speer Has Not Shown He Received Ineffective Assistance of Counsel*

Speer first notes that Kepfield provided no information about his decision not to call Speer's proposed witnesses. He adds there is no indication Kepfield investigated the witnesses, despite Kepfield's admission that he had time to subpoena them. For these reasons, Speer concludes Kepfield failed to make reasonable investigations to support his decision to not call those witnesses.

Speer is correct that Kepfield did not explain why he did not call Speer's proposed witnesses. What Speer fails to mention is that no one ever asked Kepfield why he did not call these witnesses. As the claimant, Speer bears the burden to prove that Kepfield's failure to call these witnesses had not resulted from strategy. *State v. Gleason*, 277 Kan.

624, 644, 88 P.3d 218 (2004) ("The defendant bears the burden of demonstrating that trial counsel's alleged deficiencies were not the result of strategy."). Because Speer has provided no evidence on why Kepfield did not call them, he has not met this burden.

Next, Speer contends Kepfield spent only a sparse amount of time working on his case outside of court. This time included meeting with Speer in person for only 4.2 hours over a span of 16 months. Speer claims it appears that beyond failing to investigate potential witnesses, Kepfield did little investigation to make reasonable decisions to assist in his case.

The district court made no finding about the time Kepfield spent working on the case outside court, so we have no finding to review. While Kepfield's BIDS billing request does show he spent 4.2 hours outside court working on Speer's case, we do not make fact-findings. *State v. Berriozabal*, 291 Kan. 568, 591, 243 P.3d 352 (2010). While the district court made findings about Kepfield's in-person consultations with Speer, this finding does not show how much time Kepfield spent preparing for trial or how much investigation he did during that time.

Finally, Speer argues that substantial evidence does not show that Kepfield allowed him to testify. Speer and Kepfield gave conflicting testimony on this point, and the district court did not resolve that conflict. Instead, the court looked to the trial record, in which Speer affirmed (1) he had a "full opportunity" to consult with Kepfield about testifying; (2) he understood the decision to testify was ultimately his; (3) he had a full opportunity to consider whether he wanted to testify; and (4) he did not want to testify in his defense. The court resolved the conflict between Speer's statements at trial and his statements at the evidentiary hearing in favor of his trial statements. Just as we do not make findings of fact, we do not resolve conflicts in evidence. The district court's determination stands. In any event, the court's finding appears to be well supported by the evidence.

19

Even if Kepfield were deficient, Speer has failed to show prejudice. Speer did not call any of his proposed witnesses at the hearing nor did he proffer what he would have said if he had testified at trial. And while Speer's motion includes some speculation about what his proposed witnesses might have said, speculation is generally insufficient to meet the burden of proof to establish prejudice. See *Mullins v. State*, 30 Kan. App. 2d 711, 719, 46 P.3d 1222 (2002). Without knowing what the witnesses' testimony would have been, we cannot determine what effect it would have had on the outcome of the trial. We find the district court did not abuse its discretion in denying Speer's motion.

Affirmed.