NOT DESIGNATED FOR PUBLICATION

No. 120,655

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

JOE LOUIS STEWART JR.,
*Appellant*.


MEMORANDUM OPINION

Appeal from Lyon District Court; W. LEE FOWLER, judge. Opinion filed March 6, 2020. Affirmed.

*Korey A. Kaul*, of Kansas Appellate Defender Office, for appellant.

*Laura L. Miser*, assistant county attorney, *Marc Goodman*, county attorney, and *Derek Schmidt*, attorney general, for appellee.


Before STANDRIDGE, P.J., LEBEN and BRUNS, JJ.


PER CURIAM: A jury convicted Joe Louis Stewart Jr. of two counts of aggravated indecent liberties with a child under the age of 14 years. On appeal, Stewart contends that the district court erred when it allowed the State to introduce evidence of a prior instance of sexual misconduct under K.S.A. 2017 Supp. 60-455(d). Stewart also contends that the district court erred in instructing the jury about the prior crimes evidence. Based on our review of the record, we find no reversible error. Thus, we affirm Stewart's convictions.

1

J.R. began dating Stewart in 2015. At the time, J.R. was a single mother and had three daughters. One of the daughters, S.R., was nine years old. During his relationship with J.R., Stewart spent a lot of time with S.R. According to J.R., Stewart became a "father figure" to S.R and bought her several things. One of the items he bought S.R. was a cell phone.

In July 2016, Stewart and J.R. were on a break in their relationship. Even so, Stewart asked if he could remain a part of S.R.'s life, and J.R. permitted him to do so. On July 25, 2016, Stewart went to J.R.'s apartment to watch a movie. At the apartment, Stewart, J.R., and S.R. laid on the bed in J.R.'s bedroom to watch the movie.

S.R. testified at trial that her mother got up and went to the bathroom. While J.R. was out of the room, S.R. asked Stewart to scratch her back. Stewart, who was lying next to her on the bed, scratched her back under her nightgown. Although Stewart denied doing so, S.R. testified that he slid his hand down her back into her underwear and put his finger in her anus.

Shortly after J.R. returned from the bathroom, Stewart said he was going home. As he was leaving, J.R. and S.R. went with him into the living room. After Stewart left the apartment, S.R. began to cry and told her mother that Stewart had put his hand down the back of her pants. She also told her mother that Stewart had put his tongue in her mouth when she hugged him when he was leaving. Although J.R. went outside to confront Stewart, he was already gone. When she went back inside the apartment, J.R. told S.R. that she would never have to see Stewart again.

In September 2016, J.R. and S.R. saw Stewart and a woman riding in a vehicle with a child in the backseat. S.R. told her mother that she did not want "anything to

happen to that child that happened to me." At that point, J.R. decided to call the police. Subsequently, S.R. was interviewed by Kayla Delgado, a child protections specialist with the Kansas Department for Children and Families. In the interview, S.R. repeated the allegations that she had told her mother.

On October 17, 2017, the State charged Stewart with two counts. In the first count, the State charged him with aggravated sodomy or, in the alternative, aggravated indecent liberties with a child under the age of 14 related to the incident in the bedroom. In the second count, the State charged Stewart with aggravated indecent liberties with a child under the age of 14 related to the incident as Stewart was leaving J.R.'s apartment.

Prior to trial, the State filed a motion to admit evidence of prior sexual misconduct under K.S.A. 2017 Supp. 60-455(d). In the motion, the State sought to admit evidence at trial of a prior allegation of sexual misconduct involving the 11-year-old daughter of a woman Stewart had once dated. After holding a hearing on the motion, the district court took the matter under advisement. Ultimately, the district court ruled that the prior allegation was similar enough to the current charges to meet the threshold requirement of K.S.A. 60-455(d) evidence.

At a two-day trial held on September 24-25, the State presented evidence in support of its charges, including the K.S.A. 60-455(d) evidence. The State elicited testimony from T.T. and her daughter, J.T., about an incident that occurred in 2011. T.T. testified that Stewart moved in with her and her two children in 2008. After the relationship ended and Stewart moved out, the two remained friends. On occasion, Stewart would come over to her house to babysit the children.

Just before Thanksgiving in 2011, T.T. asked Stewart to babysit while she was at work. T.T. testified at Stewart's trial that J.T. called her at work and told her that he had touched her in an inappropriate manner. T.T. testified that she came home from work and

3

confronted Stewart. After he denied the incident, T.T. brought J.T. down from her bedroom and she continued to accuse Stewart of inappropriate touching. Stewart continued to deny the allegations, and T.T. told him to get out. According to T.T., she did not report the incident to the police because she was "in shock" about what had happened. She also testified that she feared for her safety because Stewart knew martial arts.

J.T. also testified at trial about the prior incident. She testified that Stewart came into her bedroom and asked if she wanted to come downstairs to watch television with him. According to J.T., she was sitting with Stewart on the couch when he removed the safety pin that was holding the top of her pajamas together. She testified that Stewart told her that she was old enough to have her shirt opened a little bit. J.T. testified that this caused her to feel uncomfortable, so she went back up to her room to go to bed.

J.T. testified that Stewart came into her bedroom and laid down beside her on the bed. She further testified that Stewart told her that he would buy her a cell phone that she wanted. During the conversation, Stewart allegedly began rubbing J.T.'s chest and then moved his hand inside her underwear and touched her between the legs. J.T. indicated that she told Stewart that she was uncomfortable, and he stopped. J.T. believed that she went to sleep after the incident and called her mother the next morning to tell her what happened. J.T. also thought she talked to the police just after the incident occurred. A couple of years later, J.T. began therapy and the incident was ultimately reported to the police.

Stewart also testified at trial. He denied inappropriately touching either S.R. or J.T. He also denied that T.T. had ever confronted him about the allegation involving J.T. Stewart also testified about his on-and-off again relationship with J.R. and acknowledged that he served as a father figure to S.R. Regarding the allegations in this case, Stewart admitted that he went to J.R.'s apartment to watch a movie with her and S.R. Stewart testified that although S.R. asked him to scratch her back, he refused. He also denied that

4

J.R. ever left him alone with S.R. in the bedroom. Stewart also denied touching S.R. in any way while in the bedroom. According to Stewart, he hugged S.R. and kissed her on the lips at the door before he left the apartment. However, he denied putting his tongue in her mouth. Stewart testified that although J.R. called him later that night to ask about a phone that he said he would get for S.R., she did not make any accusations about inappropriate touching.

At the close of the evidence, the State voluntarily dismissed the aggravated sodomy charge but continued to pursue two counts of aggravated indecent liberties with a child under the age of 14 years. After deliberation, the jury convicted Stewart of both charges. The district court subsequently sentenced him to concurrent Hard 25 sentences. Thereafter, Stewart filed a timely notice of appeal.

ANALYSIS

*K.S.A. 60-455(d) Evidence*

On appeal, Stewart first contends that the district court erred in admitting evidence of the alleged prior criminal act. Although Stewart candidly admits that the prior allegations involving J.T. "bore some similarities to the incident at issue in this trial," he argues that the testimony of the witnesses about the prior event was so inconsistent that the prejudicial value of the evidence outweighs its probative value. As a result, Stewart argues the erroneous admission of this evidence denied him a fair trial.

We first consider whether Stewart has preserved this issue for appeal. Whether an issue has been properly preserved for appeal is a question of law that this court reviews de novo. *State v. Haberlein*, 296 Kan. 195, 203, 290 P.3d 640 (2012). To preserve an evidentiary issue for appellate review, a party must lodge a timely and specific objection at trial. K.S.A. 60-404; *State v. Dupree*, 304 Kan. 43, 62, 371 P.3d 862, *cert. denied* 137

S. Ct. 310 (2016). "Even when the district court rules on the admissibility of evidence pretrial, a party must still make an objection at trial before the admission of the evidence because the unfolding of a case may require a reevaluation of the reasons for the initial ruling. [Citation omitted.]" 304 Kan. at 62.

A contemporaneous objection gives the district court the opportunity to reevaluate its relevance and potential for prejudice in light of the evidence to be presented to the jury. Rulings on pretrial motions have no legal consequence until the evidence is presented at trial. The contemporaneous objection rule found in K.S.A. 60-404 allows a district court to act as a gatekeeper of the evidence to be admitted at trial and gives the court the opportunity to consider evidentiary issues to reduce chances of reversible error. See *State v. King*, 288 Kan. 333, 342, 204 P.3d 585 (2009).

The Kansas Supreme Court recently rejected a defendant's claim that a pretrial objection meets the definition of a timely contemporaneous objection in regard to K.S.A. 60-455 evidence. *State v. Ballou*, 310 Kan. at 591, 612-14, 448 P.3d 479 (2019). It reasoned that a pretrial ruling is subject to change at trial as the case unfolds. As a result of the fluid nature of a trial, a district court should be given the chance to make a final ruling after hearing additional arguments and considering evidence. 310 Kan. at 613. In *Ballou*, our Supreme Court also reaffirmed its previous position that the "contemporaneous objection rule tracks with the plain language of K.S.A. 60-404." 310 Kan. at 614.

A review of the record reveals that Stewart did not make a timely and specific objection to the K.S.A. 60-455(d) evidence at trial. Rather, he objected before trial and suggested that the evidence of prior sexual misconduct was unduly prejudicial. After the district court granted the State's motion, Stewart's counsel asked for a continuance to conduct additional investigation, but he did not ask for a continuing objection to the admissibility of the evidence.

6

On the first day of trial and before the presentation of evidence, the following discussion was held on the record:

"[DEFENSE COUNSEL]: And, Your Honor, I don't know, my supposition is on the prior crimes evidence that there was an opposition to that motion. I would formally object to the granting of the 455 evidence so then I'll—

"THE COURT: There was not an agreement on that, you're correct. There was opposition on that, too.

"[DEFENSE COUNSEL]: I don't know if she formally objected. I am renewing that objection now and then I'll make it in very abbreviated form in front of the jury.

"THE COURT: Okay.

"[DEFENSE COUNSEL]: I believe that it does have the propensity—pardon me, wrong word—the effect elicited during jury selection to deprive the defendant of a fair trial and the facts of the particular case and I recognize the Court's obligation to follow the law, but I am going to formally object."

"THE COURT: I'm obligated to follow the legislation's directive and the Supreme Court's directive as to that particular statute."

Even though defense counsel indicated his intent to object to the admission of the K.S.A. 60-455(d) evidence at trial, no objection was made to the testimony of either T.T. or J.T. at trial. Despite his lack of objection to this evidence, Stewart now claims the district court erred in admitting the K.S.A. 60-455(d) evidence. But Stewart failed to object to the admissibility of this evidence at trial or make a clear and specific argument about how the prejudicial effect of the evidence outweighed its probative value. We thus conclude that Stewart has failed to preserve this evidentiary issue for review.

Even if Stewart had properly preserved his objection, he has not shown that the prejudicial effect of the evidence presented outweighed its probative value. K.S.A. 2017 60-455(d) provides that "evidence of the defendant's commission of another act or offense of sexual misconduct is admissible, and may be considered for its bearing on any matter to which it is relevant and probative." Of course, all relevant evidence is

admissible unless it is prohibited by statute, constitutional provision, or court decision. See K.S.A. 60-407(f); *Nauheim v. City of Topeka*, 309 Kan. 145, 153, 432 P.3d 647 (2019.) Relevant evidence is "evidence having any tendency in reason to prove any material fact." K.S.A. 60-401(b); see *State v. Lowery*, 308 Kan. 1183, 1226, 427 P.3d 865 (2018).

The concept of relevancy includes (1) materiality, which we review de novo; and (2) the probative value of the evidence, which we review using an abuse of discretion standard. *State v. Miller*, 308 Kan. 1119, 1166, 427 P.3d 907 (2018). Evidence is probative if it furnishes, establishes, or contributes toward proof. Evidence is material if it tends to establish a fact that is at issue and is significant under the substantive law of the case. See 308 Kan. at 1167. Here, the parties do not dispute the district court's finding that the evidence was relevant and probative. Instead, Stewart focuses on the prejudicial effect of the K.S.A. 60-455(d) evidence admitted at trial.

It is left to the sound discretion of the district court whether to exclude relevant evidence when it finds the probative value of the evidence is outweighed by its potential for producing undue prejudice. 308 Kan. at 1167; see K.S.A. 60-445. We review the district court's determination for an abuse of discretion. Judicial action constitutes an abuse of discretion if it is arbitrary, fanciful, or unreasonable; is based on an error of law; or is based on an error of fact. *State v. Ingham*, 308 Kan. 1466, 1469, 430 P.3d 931 (2018).

In *State v. Prine*, 297 Kan. 460, Syl. ¶ 3, 303 P.3d 662 (2013), our Supreme Court held: "As long as the evidence is of 'another act or offense of sexual misconduct' and is relevant to prove propensity or 'any matter,' it is admissible, as long as the district judge is satisfied that the probative value of the evidence outweighs its potential for undue prejudice." See *State v. Boysaw*, 309 Kan. 526, 539-41, 439 P.3d 909 (2019) (district courts must balance the probative value against the threat of undue prejudice). A district

8

court may exclude relevant and otherwise admissible evidence if the court finds that the probative value of the evidence "is substantially outweighed by the risk that its admission will unfairly and harmfully surprise a party who has not had reasonable opportunity to anticipate" its offering. K.S.A. 60-445.

In *United States v. Sturm*, 673 F.3d 1274, 1284-85 (10th Cir. 2012), the United States Court of Appeals for the Tenth Circuit set forth four factors to consider in weighing probative value against prejudicial effect: (1) how clearly the prior act had been proved; (2) how probative evidence is of the material fact it is admitted to prove; (3) how seriously disputed the material fact is; and (4) whether the government can avail itself to any less prejudicial evidence. These factors have also been applied by our Supreme Court. See *Boysaw*, 309 Kan. at 541. Moreover, in *United States v. Enjady*, 134 F.3d 1427, 1433 (10th Cir. 1998), the Tenth Circuit held that the exclusion of this type of evidence after weighing the probative value against its prejudicial effect should be done infrequently, reasoning that evidence of similar crimes should "'normally'" be allowed in sexual assault cases.

To comply with K.S.A. 2017 Supp. 60-455(d), the district court had to consider (1) whether the evidence was relevant and probative of Stewart's propensity to commit the charged crimes, and (2) the probative value of the evidence compared to the possibility of undue prejudice arising from its admission. See *Prine*, 297 Kan. at 477-78. In weighing the probative value of the evidence against its prejudicial effect, a district court "should consider, among other factors: the likelihood that such evidence will contribute to an improperly based jury verdict; the extent to which such evidence may distract the jury from the central issues of the trial; and how time consuming it will be to prove the prior conduct." *Boysaw*, 309 Kan. at 541.

Here, Stewart does not dispute that the prior incident was sufficiently similar to the charged crime in order to be relevant. In both cases, Stewart was dating a single

9

mother with a preteen girl. Stewart stepped into the role of father figure to both girls and remained in their lives after the relationship with their mother had ended. Stewart was in a position of trust with the girls, and the alleged incidents of abuse began while watching movies or television. In both cases, Stewart either bought the child a phone or talked to the child about buying a phone. In each case, the child told their mother about the alleged abuse shortly after the incident.

On the issue of undue prejudice, consideration "turns not on whether the evidence is damaging but on whether the evidence is likely to contribute to an improper jury verdict or distract from the central issues at trial." *State v. Dern*, 303 Kan. 384, Syl. ¶ 3, 362 P.3d 566 (2015). Most likely, T.T.'s and J.T.'s testimony was damaging to Stewart. Nevertheless, we do not find it likely that the testimony contributed to an improper verdict or distracted the jury from the central issue presented at trial. We also do not find that it was an abuse of discretion for the district court to admit the testimony as propensity evidence under K.S.A. 2017 Supp. 60-455(d). Although Stewart points to minor inconsistencies between the testimony of J.T. and her mother—such as the time of day it occurred and how soon J.T. reported the incident—the details of the alleged sexual abuse were consistent.

Stewart concedes that there was not a less prejudicial way to prove propensity than to admit the prior crimes evidence. Although the prior allegation of sexual misconduct involving J.T. was not charged or proven in a separate proceeding, both T.T. and J.T. testified in person at the trial of this case and were subject to cross-examination. As such, the jury had the opportunity to assess the credibility of the witnesses and to weigh the differences between T.T.'s and J.T.'s version of the event. See *State v. Kemp*, No. 115,812, 2018 WL 671182, at *9-10 (Kan. App. 2018) (unpublished opinion), *rev. denied* 309 Kan. 1351 (2019). Thus, we conclude that the district court did not abuse its discretion in the admission of T.T.'s and J.T.'s testimony regarding the prior allegation of sexual misconduct against Stewart.

*Limiting Instruction*

Next, Stewart argues the district court erred in the wording of the limiting instruction given to the jury about the K.S.A. 60-455(d) evidence admitted at trial. When analyzing jury instruction issues, we follow a three-step process by:  (1) determining whether the appellate court can or should review the issue, i.e., whether there is a lack of appellate jurisdiction or a failure to preserve the issue for appeal; (2) considering the merits to determine whether error occurred; and (3) assessing whether the error requires reversal. *State v. McLinn*, 307 Kan. 307, 317, 409 P.3d 1 (2018). Whether a party preserved the jury instruction issue affects the reversibility inquiry at the third step. 307 Kan. at 317; see K.S.A. 2019 Supp. 22-3414(3).

When evidence of a prior sex crime is admitted in a case in which the defendant is charged with a sex crime, the district court need not give a limiting instruction. *Prine*, 297 Kan. at 479. If, however, the district court chooses to give a limiting instruction, it must be legally correct. "[A]n instruction must always fairly and accurately state the applicable law and an instruction that does not do so would be legally infirm." *State v. Plummer*, 295 Kan. 156, 161, 283 P.3d 202 (2012).

Here, the district court instructed the jury—based on PIK Crim. 4th 51.030 (2017 Supp.)—as follows:

> "Evidence has been admitted tending to prove the defendant committed crimes of a sexual nature other than the present sex crimes charged. This evidence may be considered solely for the purpose of proving propensity of the defendant to commit other sex crimes."

At the jury instruction conference, Stewart objected to the words "tending to prove" because he believed they bolstered the testimony of J.T. and her mother about the prior allegation of sexual misconduct. As the parties recognize, this court has found that

11

when a defendant is challenging that an uncharged event occurred, the better practice would be to use the word "alleging" in place of "tending to prove." *State v. Willis*, 51 Kan. App. 2d 971, 992-93, 358 P.3d 107 (2015). Based on *Willis*, PIK Crim. 4th 51.030 was amended to allow for the option of using the words "tending to prove" or "alleging" and the Notes on Use for the instruction now state: "When there is no prior conviction and defendant disputes that the uncharged conduct ever occurred, the better practice is to use the term 'alleging' rather than 'tending to prove.'" PIK Crim. 4th 51.030, Notes on Use (2017 Supp.).

Even so, we do not find that the district court erred by giving the limiting instruction with using the "tending to prove" language. Rather, as in *Willis*, we find that it is appropriate to focus on the jury instructions as a whole to determine whether the jurors were properly and fairly instructed on the applicable law. Here, as in *Willis*, the jurors were instructed that it was up to them to determine the weight and credit to be given to the testimony of each witness. 51 Kan. App. 2d at 993; see *State v. Everette*, No. 115,645, 2018 WL 4517575, at *15 (Kan. App. 2018) (unpublished opinion) (rejecting claim that the limiting instruction unfairly bolstered credibility of K.S.A. 60-455 witnesses); *State v. Spalding*, No. 114,561, 2017 WL 1433513, at *4-6 (Kan. App.) (unpublished opinion), *rev. denied* 307 Kan. 993 (2017) (same).

Viewing the jury instructions given by the district court as a whole, we conclude that the district court fairly stated the applicable law as well as the State's burden of proof. Although we agree that it would have been better practice for the district court to have used the word "alleging" in place of "tending to prove" under the circumstances presented, we do not find that the instruction as given constitutes reversible error in light of the jury instructions as a whole. Nor do we find that the language used in the instruction denied Stewart's right to a fair trial.

Affirmed.